PATRICK M. FITZGERALD *vs.* HENRY L. ROBINSON.

This imprecation, "May the Lord have mercy on two men who brought me to court yesterday, bringing shame and scandal upon me; my curse and the curse of God be down upon Patrick Fitzgerald and Patrick Butler, who brought me to court yesterday, bringing me shame and scandal, and that it remain on them;" uttered upon two of his parishioners by a Roman Catholic priest in his official character, in presence of his congregation during divine service on the Lord's day, is not in itself slanderous.

An anathema and sentence of excommunication pronounced by a Roman Catholic priest upon one of his parishioners, whether pronounced with or without authority, is not, in this country, at least in the absence of an intent to injure the parishioner in his temporal affairs, a cause for a civil action.

The words, "He keeps a bad place of resort; keep away from it," spoken of a tradesman in relation to his trade, are actionable.

The words, "He keeps a bad house, and not a proper place of resort; he keeps bad girls there," taken in their natural and obvious sense, impute the keeping a house of ill fame, and are actionable.

The words, "Do not go to his house to bring disgrace on yourselves and on me; do not go that way at all; he is a bad man," spoken of a tradesman, in relation to his trade, are actionable.

TORT. The plaintiff's declaration was as follows:

"And the plaintiff says that he for many years now last past has been a member of the Roman Catholic Church, in good and regular standing; that hitherto, and before the committing of the several grievances by the said defendant, hereinafter mentioned, he was always reputed, esteemed and accepted by and among the members of said church, as a worthy and upright member thereof; that hitherto, and before the committing of the grievances, hereinafter to be mentioned, by the said defendant, he had faith

fully conformed to the precepts, rules and ordinances of said church, and had faithfully performed all the duties incumbent upon him as a member of said church, and had committed no offence whereby he merited the censure, or rebuke or discipline of said church, or of any priest or other officer officiating therein ; but the said defendant, well knowing the premises, and contriving, and wickedly and maliciously intending, to bring the said plaintiff into public scandal, infamy and disgrace with and among the members of said Catholic Church, and divers other good people, and to cause it to be suspected and believed by said Catholic members of said church, and by said divers other good people, that the said plaintiff was guilty of the offences and misconduct hereinafter stated to have been charged upon him and imputed to him by the said defendant; he, the said defendant, being then and there a priest in charge of the parish to which the said plaintiff then and there belonged, hitherto, to wit, on the 28th day of May, A. D. 1871, the same being a Sabbath day, at Greenfield aforesaid, during the service then and there being performed by the said defendant, at the Holy Trinity Church, on said day, in the presence and hearing of large numbers of persons, did falsely and maliciously speak and publish of and concerning the plaintiff, the false, scandalous, injurious, malicious and defamatory words following, that is to say, ' May the Lord have mercy on two men' (meaning the said plaintiff and another person) ' who brought me ' (meaning said defendant) ' to court yesterday, bringing shame and scandal upon me ' (meaning said defendant) ; ' my curse ' (meaning the defendant's curse) ' and the curse of God be down upon Patrick Fitzgerald' (meaning said plaintiff) ' and Patrick Butler, who brought me ' (meaning said defendant) ' to court yesterday, bringing me ' (meaning said defendant) ' shame and scandal, and that it remain on them ' (meaning the plaintiff and said Patrick Butler) ; he, the said defendant, then and there accompanying said scandalous declaration with certain ceremonies, which, being taken in connection with said words, were known and understood, by said members of said Catholic Church, to mean excommunication therefrom, and from all the privileges, fellowship and consolations thereof

he, the said defendant, maliciously intending then and there to excommunicate, and being understood by those present to have excommunicated said plaintiff from said Catholic Church, and all its privileges.

" By means of the committing of which grievances by the said defendant, as aforesaid, the said plaintiff is greatly injured in his good name, fame and credit, and brought into public scandal, infamy and disgrace with and among the members of said Catholic Church, and divers other good and worthy persons, inasmuch as said persons, to whom the innocence of said plaintiff was unknown, have, on account of the committing of said grievances by said defendant, hitherto suspected and believed, and still suspect and believe the said plaintiff to have been guilty of the offence and misconduct charged by said defendant, to wit, the offence of maliciously and unjustly bringing the said defendant to court, to his shame and scandal, (which said charge and allegation so made by the said defendant, in manner and form as aforesaid, is untrue, which said defendant well knew when he made the same,) and said persons have, by reason of the said grievances by the said defendant committed, hitherto wholly refused, and still do refuse, to have any transaction, or discourse, or acquaintance with said plaintiff, as they were before accustomed to have, and would otherwise have.

" And also, by means of said grievances committed by said defendant as aforesaid, the said plaintiff has been and still is deprived of the privilege of attending public worship at the said Church of the Holy Trinity, or elsewhere, as he heretofore has been accustomed to exercise and enjoy ; and has been deprived thereby of the privilege of attending mass, and partaking of the holy sacrament ; and for the clearing of this scandal, and showing his innocency of the charges so imputed to him by the said defendant as aforesaid, he has been put to great trouble and expense, to wit, to a great loss of time in exculpating himself to and with divers persons of his acquaintance from all participation in the bringing the said defendant to court, as alleged by the said defendant as aforesaid, namely, with [naming eleven persons], and divers other persons ; and to the expense, to wit,

$25, in consulting counsel as to his rights and remedies in the premises.

" And also, by means of said grievances, committed by said defendant as aforesaid, the following persons, to wit, [naming twenty persons,] and divers others, have wholly refused to have or to permit any society or intercourse with the said plaintiff, or to receive him into their homes or company, or to visit him, as they hitherto were accustomed to do.

" And also, by means of said grievances, committed by the said defendant as aforesaid, said plaintiff, being a trader, has been deprived of the custom and trade of said [twenty persons last above named], and of divers other persons.

" Second count. And the plaintiff further says, that he was a member of the Catholic Church, in good and regular standing; that the defendant, being the priest in charge of the parish to which said plaintiff belonged, did assume wrongfully, maliciously, and without just cause therefor, to expel and excommunicate him therefrom, and thereby deprived the plaintiff of the privileges which he held and enjoyed as a member of said church, and caused divers members of the church to refuse fellowship with him in the church, and intercourse with him socially, to wit, [naming fifteen persons,] and divers other persons; and did also thereby cause said persons heretofore named, and said divers others, to refuse to deal with him in business matters, and did subject the said plaintiff to great trouble and expense in clearing himself from said scandal imputed to him by the said defendant, and in showing to divers persons, to wit, [naming four persons,] and said other persons heretofore mentioned, and to divers others, his innocency in the charges and offences imputed to him by the said defendant, at the time of excommunicating him as aforesaid; and in employing counsel, and purchasing legal advice as to his rights and remedies in the premises.

" Third count. And the plaintiff further says, that he was a member of the Catholic Church, in good and regular standing, and the defendant, being priest of the parish to which said plaintiff belonged, with intent to bring the said plaintiff into public scandal, infamy and disgrace with and among the members of

aid Catholic Church, and divers other persons, in the presence and hearing of said members of said church, did falsely and maliciously speak and publish of and concerning the plaintiff the false, scandalous, injurious, malicious and defamatory words following, that is to say, ' May the Lord have mercy on two men ' (meaning said plaintiff and another person) ' who brought me ' (meaning said defendant) ' to court yesterday, bringing shame and scandal upon me ' (meaning said defendant) ; ' my curse ' (meaning defendant's curse) ' and the curse of God be down upon Patrick Fitzgerald ' (meaning said plaintiff) ' and Patrick Butler, who brought me ' (meaning said defendant) ' to court yesterday, bringing me ' (meaning said defendant) ' to shame and scandal, and that it remain on them ' (meaning the plaintiff and said Butler) ; he, the said defendant, accompanying said scandalous declaration with certain ceremonies, intended and tending to degrade, injure and disgrace said plaintiff among said members of said church and divers other persons.

" By means of the committing of which grievances by the said defendant, the plaintiff was greatly injured in his good name, fame and credit, and brought into public infamy, scandal and disgrace, inasmuch as divers members of said church, to wit, William Mehan, and said divers persons heretofore mentioned, have wholly refused to associate or have any intercourse with him, or to trade or deal with him ; and the said plaintiff was also thereby put to great trouble and expense in exculpating himself from said charges and allegations imputed to him by said defendant as aforesaid, and in showing his innocency therein, to George Pierce, Jr., and said divers other persons heretofore mentioned, and in procuring counsel and purchasing advice as to his rights and remedies in the premises.

" Fourth count.  And the plaintiff further says, that before and at the time of the committing of the grievances hereinafter stated, and from thence hitherto, he hath used and exercised the trade and business of a retailer of tobacco, tea, coffee, spices, fish and candies, and other articles, and was accustomed to let his hall in his the plaintiff's house for social parties, and occasionally prepare meals and refreshments for persons, and hath

always conducted himself, and still continues to conduct himself, with honesty and integrity in his said business, to wit, at said Greenfield, and hath never been guilty, nor, until the committing of said grievances hereinafter stated, been suspected to have been guilty of any cheating, fraud or dishonesty, in his said business or otherwise.

" By means whereof the said plaintiff, before the committing of said grievances, had not only deservedly obtained the good opinion, confidence and credit of all his neighbors, and other good and worthy people, to whom he was in any wise known, but had acquired, and was still continuing to acquire, in his said trade and business, divers great profits and emoluments for his support and maintenance, to wit, at Greenfield, aforesaid; yet the defendant, well knowing the premises, contriving and wickedly and maliciously intending to injure the said plaintiff in his said good name, fame and credit, and in his trade and business, and to bring him into public scandal, infamy and disgrace, and to cause it to be suspected and believed that he, the said plaintiff, was guilty of fraud and dishonesty, and of cheating and imposing on his customers in his trade and business, and to oppress and ruin him, the said plaintiff, heretofore, to wit, on the sixth day of November last, at Greenfield aforesaid, in a certain public discourse which he, the said defendant, then delivered and published at the Church of the Holy Trinity, of and concerning the plaintiff in his trade and business, falsely and maliciously spoke and published of and concerning the plaintiff in his said trade and business the false, scandalous, malicious and defamatory words following, that is to say : ' He ' (meaning the plaintiff) ' keeps a bad place of resort ' (meaning that the plaintiff's house was a bad place of resort) ; ' keep away from it ' (meaning that the plaintiff was a bad man, and permitted bad and wicked persons to resort to his, the plaintiff's, house, for illegal and improper purposes, and that his, the plaintiff's, house was a disorderly house, and so kept by him, said plaintiff.)

" By means of said grievances, so committed by the defendant as aforesaid, said plaintiff, being a trader and dealer as aforesaid, has been deprived of the custom and trade of divers persons, to

wit, [naming sixteen persons,] and divers other good and worthy people, and whereby, also, the said plaintiff was deprived of the profits, income and emoluments of letting his said hall, and of furnishing refreshments as aforesaid, and of the profits of his trade and business as aforesaid.

" Fifth count. And the plaintiff further says, that the defendant publicly, falsely and maliciously accused the plaintiff of the crime of keeping a house of ill fame, by words spoken of the plaintiff substantially as follows, to wit: ' He ' (meaning the said plaintiff) ' keeps a bad house ; that it ' (meaning the plaintiff's house) ' is a bad house, and not a proper place of resort ; that he ' (meaning the plaintiff) ' keeps bad girls there ' (meaning that the said plaintiff kept girls there at his, the said plaintiff's, house, for the purpose of prostitution.)

" Sixth count. And the plaintiff further says, that he was a trader as aforesaid, and accustomed to furnish meals and entertainments for parties, as aforesaid, and that heretofore, to wit, on the fifth day of January last past, he was applied to by one Patrick McKenney, of Orange, in said county, to provide for himself, and divers others of his friends from said Orange, food and entertainment at his said place of business, and the defendant wickedly, maliciously, intending to injure the said plaintiff, and to deprive him of his custom, trade and business, and the profits to be derived therefrom, did speak and publish concerning the plaintiff the false, malicious, scandalous and defamatory words following, that is to say : ' My Orange friends, let not any of you go to Patrick Fitzgerald's ' (meaning the plaintiff's) ' house, to bring disgrace on yourselves and on me " (meaning the defendant) ; ' do not go that way at all ' (meaning not to go to the plaintiff's place of business) ; ' he ' (meaning the plaintiff) ' is a bad man,' meaning thereby that the plaintiff was a disreputable and dishonest man, by means whereof the said McKenney and the said other persons from said Orange were induced to obtain their meals and refreshments elsewhere, and not of said plaintiff, as they intended and otherwise would have done, and said plaintiff was thereby deprived of the custom of said parties, and the profits arising therefrom, and was brought into disgrace and scandal with said parties, and divers other persons."

To each count of this declaration the defendant demurred, and in the Superior Court the demurrer was sustained as to all the counts. The plaintiff appealed to this court.

*D. Aiken,* for the defendant.

*A. Brainard,* for the plaintiff.

AMES, J. The words complained of in the first count of the declaration are not slanderous in themselves, and are not made so by any averments that they were spoken of the plaintiff's trade or business. However indecent or profane they may appear as set forth, they do not impart a defamatory charge. There is nothing in the declaration to show that if the plaintiff did bring the defendant into court, even to his shame and scandal, he was guilty of any crime, or did anything wrong, in so doing. It does not appear whether the defendant meant to be understood, in using the language imputed to him, that he was brought into court as a defendant, a plaintiff, or a witness, or how bringing him into court could have operated to his scandal or shame, or how it furnished him any ground of complaint. We are unable to see how the falsity of the words, even supposing them to have been malicious, could have affected the plaintiff's good name, or created any necessity that the law would recognize, for " showing his innocency " of the supposed offence and misconduct so charged against him.

But taking the whole count together, it is apparent that it is intended to charge more than a mere slander upon the plaintiff's good name. His complaint is in substance, and when relieved of all unnecessary averments, that the defendant made a charge against him which (whether criminal in its nature or not) was wholly false and malicious ; that for the alleged reason contained in that false charge he proceeded on a certain Sunday, in the presence of the congregation and during service, in his official character as a priest, to pronounce an anathema upon the plaintiff, and to go through a ceremonial which was understood, and was intended to be understood, as a formal, authoritative, ecclesiastical sentence of excommunication, depriving him of all his rights and privileges as a member of the Roman Catholic Church ; and which had the effect of injuring him in his business as a

trader by depriving him of the custom and trade of a large num-
ber of persons, enumerated in the declaration.

As the question of the sufficiency of this count in the declara-
tion is raised on a demurrer, we are to inquire whether, assuming
the facts averred to be true, they are sufficient as matter of law
to enable the plaintiff to maintain this action.  As a member of
that communion, he was subject to its discipline in matters spir-
itual, as administered by its proper officers, and in accordance
with its rules.   The power of excommunication resides some-
where in that church, and if the defendant, in virtue of his
priestly office, was vested with that power, as the declaration
seems to imply, the exercise of it was in the nature of a judicial
act.   The declaration does not distinctly inform us what his au-
thority was in that respect, but if the act done amounted to a
valid excommunication, it is not for the civil courts to inquire
into the reasonableness or propriety of the act.   If the defendant
was competent to pass sentence of excommunication, we cannot
inquire into the grounds and regularity of the proceedings.   *Rem-
ington* v. *Congdon*, 2 Pick. 310.   *Bouldin* v. *Alexander*, 15 Wall.
131.   *Shannon* v. *Frost*, 3 B. Mon. 253.   *Farnsworth* v. *Storrs*,
5 Cush. 412.   *Gregg* v. *Massachusetts Medical Society*, 111 Mass.
185.   We say that the declaration seems to imply that the charge
made by the defendant, if true in fact, would have rendered the
plaintiff liable to spiritual censure, according to the discipline of
that church.   There is no other view of the case, in which the
falsity of the charge can be said to be material.   The plaintiff
apparently rests his case on the falsity and not on the trivial and
frivolous nature of the charge.

But if, on the other hand, the defendant had no authority to
pronounce such a sentence, and his act in doing so was a mere
bold assumption of power not intrusted to him, the plaintiff has
not been excommunicated at all.   It is not for us to decide what
remedy he has, or whether he has any whatever in such case, as
to his spiritual rights.   It must always be remembered that in a
court of law the only inquiry is as to civil rights.   If the declara-
tion is to be understood as presenting the plaintiff's case in this
aspect, the amount of his grievance is that the effect of the lan-

guage and ceremonies complained of was to induce certain persons to consider him as laid under an interdict, and to avoid all intercourse and business with him for that reason. But as the words complained of do not charge the plaintiff with any misconduct which the law can take notice of, the misconstruction of those words by such persons is not sufficient to furnish a ground for an action at law. The declaration does not charge an intent to injure the plaintiff in any of his business relations.

The difficulty with the plaintiff's case as presented in this count lies in the fact, that in this country and in this age, a sentence of excommunication, even if pronounced by competent authority, and still more, if possible, when pronounced without authority, is incapable of impairing or affecting a man's civil rights. There was a time when excommunication was attended with many serious temporal inconveniences ; the object of it was excluded from the society of all Christians, and disabled to do any act required to be done by one that is *probus et legalis homo*. He could not serve on juries, nor be a witness in any court, and, which is still more serious, he could not bring an action, real or personal, to recover lands, or money due to him. He was further liable to the writ *de excommunicato capiendo*, by which the sheriff was directed to take the offender, and imprison him in the county jail, until he was reconciled to the church. On these grounds, says Mr. Starkie, the case of *Barnabas* v. *Traunter*, 1 Vin. Ab. 396, may perhaps be considered as authority consistent with the general rule. Starkie on Slander, (3rd ed.) 104. This case is cited and relied upon by the plaintiff, but it is hardly necessary to say that none of the reasons suggested by Mr. Starkie as being " perhaps " sufficient to sustain it, have any existence under our laws. That was a case in which the rector of a parish, under pretence of written directions from the ordinary, falsely and maliciously announced from his pulpit that the plaintiff had been excommunicated. The plaintiff's action was sustained ; but it is clear that this case is not law in this Commonwealth.

The result of this examination is that the demurrer to the first count must be sustained. The second and third counts, which present the same cause of action in other forms, are liable

to substantially the same objections, and must also be adjudged bad on demurrer.

In the fourth count of the declaration, the words charged as having been spoken by the defendant in relation to the plaintiff and his business are these, " He keeps a bad place of resort ; keep away from it." It is alleged that the plaintiff was a trader, and was also accustomed to let his hall for social parties ; that the words alleged to have been spoken by the defendant were spoken maliciously and with the intent to injure the plaintiff in his business ; that they were false as well as malicious ; and that they had the effect to injure him in his business, by depriving him of the custom and trade of divers persons who are specially enumerated in the declaration. The words purport to be advice to all persons to whom they were addressed to avoid going to the plaintiff's place of business, for the reason that it was a bad place of resort. They amount to a charge that the plaintiff kept a place to which he permitted disreputable persons to resort for improper purposes. We have then a false charge, maliciously uttered for the purpose of injuring the plaintiff in his business, having a natural tendency to produce that effect, and resulting in special damage to him in that business. We think that this count in the declaration comes within the rule that words, even though not in themselves actionable, may become so by being spoken of the special profession, office or occupation of the person to whom they are applied. For this reason, this count in the declaration is sufficient in law, and the demurrer to it must be overruled. *Swan* v. *Tappan*, 5 Cush. 104.

The fifth count is also good, and sufficient to maintain the plaintiff's case so far as to put the other party to his defence. If we take the well established rule that words complained of as slanderous are to be understood in their natural and obvious sense, and to receive the construction which the persons to whom they were addressed would ordinarily and reasonably attach to them, the words charged in this count plainly convey a criminal imputation. To say of any one, " He keeps a bad house, not a proper place of resort ; he keeps bad girls there," would be substantially equivalent to saying that he keeps a house of ill fame,

In *Snell* v. *Snow*, 13 Met. 278, it was held that to say of a woman, " She is a bad girl," does not necessarily import that she was unchaste, or a prostitute, and that such a meaning could not be attached to the words by the *innuendo*. But the language in this count goes much farther. Taken together, it hardly admits any other construction than that which the plaintiff has given it. The demurrer to this count is therefore overruled.

The sixth count we think may also be sustained. It charges that the plaintiff, being a trader and accustomed to furnish meals and entertainment for parties, had been applied to by certain persons to provide entertainment for them ; that the defendant, maliciously intending to injure him in business, used these false, &c. words to those persons, " Do not go to his house to bring disgrace on yourselves and on me ; do not go that way at all ; he is a bad man,"— whereby they were prevented from going there, and he lost their custom, &c. It is true that the charge is somewhat indefinite, but it is sufficiently averred that it was spoken of the plaintiff in his business. It is equivalent to charging that he was a person of so bad a reputation that it would be disgraceful to go to his house at all. It was advice to all who heard it not to go to his place of business, and it had the effect of injuring him in his business. We think that this count comes within the rule that we have already held to be applicable to the fourth count.

The result then is, that the demurrer is overruled as to the fourth, fifth and sixth counts of the declaration, and is sustained as to all the other counts. *Judgment accordingly.*