## HANCHETT et al. v. CHIATOVICH.

(Circuit Court of Appeals, Ninth Circuit. May 14, 1900.)

No. ·505.

1. LIBEL—PUBLICATION TENDING TO INJURE BUSINESS—HARMLESS ERROR.

In an action for publishing a notice wherein defendants requested their employés to refrain from associating with or trading with plaintiff, the action of the court in leaving it to the jury .to determine whether or not the publication was defamatory, in connection with an instruction that the notice was capable of two constructions,—one harmless and the other defamatory,—and that the burden of showing it to be defamatory was on plaintiff, if erroneous, is in favor of defendants, since any false publication which tends to injure a person in his trade or profession, or which causes him to be shunned or avoided by his neighbors, will be presumed defamatory.

2. SAME—WORDS ACTIONABLE—COVERT MEANING.

Words used in a publication which are not actionable in themselves may become so, if from their connection they convey a covert or hidden meaning which is libelous, and are understood in their concealed or hidden sense by those who read them.

3. SAME—QUESTIONS FOR JURY.

In an action for publishing a notice wherein defendants stated that plaintiff entertained feelings of animosity towards defendants, and that his actions had tended to interfere with their business, and that his expressed intentions were to further interfere with and embarrass defendants in their business, and requesting their employés not to associate with him or disclose to him any facts concerning defendants' business, and suggesting that none of defendants' employés trade with plaintiff, it was not error for the court to leave it to the jury to determine from all the facts and circumstances of the case whether defendants meant to charge that plaintiff was not a fit or proper person for their employés to associate with, and whether it was so understood by the persons in the community who read the notice.

4. SAME—MALICE.

The publication by an employer, out of motives of malice, ill will, or revenge, of a notice to his employés requesting them not to trade with another, and intimating that 'those who do so will incur the displeasure of their employer, manifestly to the prejudice of their employment, is libelous.

In Error to the Circuit Court of the United States for the District of Nevada.

Action by John Chiatovich against L. J. Hanchett and another to recover for an alleged libelous publication. From a judgment in favor of plaintiff, defendants bring error. Affirmed.

See 93 Fed. 727, and 96 Fed. 681.

Reddy, Campbell & Metson and Torreyson & Summerfield, for plaintiffs in error.

M. A. Murphy, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This action was brought by the defendant in error against the plaintiffs in error to recover damages alleged to have been sustained by him by reason of the posting and circulation in and about the town of Silverpeak, in Esmeralda county, Nev., of the following words of and concerning the plaintiff:

· NOTICE TO OUR ·EMPLOYES.

"As John Chiatovich entertains for us feelings of animosity, and as his actions have tended to interfere with our business, and his expressed intentions

are to hinder and embarrass us still further, we deem it advisable. in our own interest, to abstain from all communication with him. We especially request our employés to refrain from associating with him, either directly or indirectly, and to disclose to him nothing that might tend to indicate the present condition of our business. We caution all against so doing, and recommend a total absence of all communication. We trust that our employés will further our interests in this matter, which demand a total session [cessation] of communication between us and him. We respectfully enjoin our people silence concerning ourselves, our business, and our property, and suggest that no one of our agents, representatives, or employés trade or deal with Chiatovich in any manner whatsoever. His interests are so antagonistic to ours, his purpose is so manifestly hostile, that those who favor him cannot complain if we consider them as equally unfriendly to us.

"L. J. Hanchett.
"L. E. H."

In his amended complaint in the court below the plaintiff alleged that at the time of the posting and circulation of the above notice he was, and for more than 25 years then last past had been, engaged in business as a merchant at the town of Silverpeak, and had always done a good business and maintained a good reputation for fair dealing, and as such merchant, and as a citizen and neighbor, had always conducted himself with honesty and fidelity, and had never been guilty, or suspected of being guilty, of slandering or vilifying his neighbors for their methods of doing business; that, by the notice so posted and published of and concerning the plaintiff, the defendants meant that the plaintiff was circulating false and malicious reports of and concerning their business and their manner and methods of conducting the same, and that the plaintiff's conduct and manner of doing business were such that he was not a fit or proper person for his neighbors to associate, communicate, or trade with; that the words so published and circulated were false, scandalous, malicious, and defamatory; and that by their use the defendants conveyed the idea, and wished and intended to have it understood and believed by those who should read and did read the notice, that the plaintiff was dishonest, wanting in probity, untruthful, and wholly unfit and unworthy for his neighbors or friends to associate or communicate with, and that his place of business was not a fit or proper place for the citizens or residents of the town of Silverpeak and the neighboring valleys, towns, and mining camps to resort to or do business in,—by reason of all which the plaintiff alleged that he was damaged in his good name, reputation, and credit in the sum of $10,000. In his amended complaint the plaintiff further alleged that, in addition to his business of merchandising, he was, at the time of the posting and circulating of the words complained of, and for a long time theretofore had been, engaged in mining, milling, and refining ores, and in keeping a saloon and boarding house at and near the town of Silverpeak, the profits of which aggregated $500 a month, and that in consequence of the publication and circulation of the notice his said business was greatly injured and became unprofitable, and that about 50 persons in the employ of the defendants, whose names are set forth in the amended complaint, stopped trading and dealing with the plaintiff, to his loss in the sum of $10,000. In their answer the defendants admitted the posting and publication of the notice; alleged that the statements therein contained were true; denied the

meaning of the words of the notice alleged in the innuendoes of the complaint; denied all the averments of damage, and also the allegations in respect to the withdrawing of patronage by the employés of the defendants; and further set up in defense of the action that the posting and publication of the notice complained of were provoked by threats and unfounded charges on the part of the plaintiff against the defendants, and it was published without malice on their part, and for the sole purpose of protecting and defending their rights and reputation in the community. The cause was tried by the court with a jury. In the course of the trial a number of witnesses were permitted, against the objections and exceptions of the defendants, to testify that they read the notice, and understood therefrom that the plaintiff was not a fit person for an associate, and that they would be discharged from the employ of the defendants if they should trade or associate with the plaintiff; and the plaintiff was, likewise against the objections and exceptions of the defendants, permitted to testify that certain men in the employ of the defendants stopped coming to his place of business or dealing with him, in consequence of the notice, and to the loss to his business occasioned thereby. These rulings, and the action of the court below in respect to instructions given and refused, constitute the principal grounds relied on for a reversal of the judgment. The plaintiff sought to recover on two grounds: First, for alleged damage to his reputation; and, next, for alleged damage to his business. The court below very properly told the jury that the defendants had the legal right to give notice to their employés that the plaintiff entertained feelings of animosity towards them, and that they deemed it advisable to abstain from all communication with him, and to make the request that their employés should not disclose to him anything concerning the condition of their business, and to keep silent concerning themselves, their business, and their property. But in respect to the alleged damage to the good name and reputation of the plaintiff the court called the attention of the jury to those clauses of the notice in which the defendants said:

"We especially request our employés to refrain from associating with him [the plaintiff], either directly or indirectly, and suggest that no one of our agents, representatives, or employés trade or deal with Chiatovich in any manner whatsoever."

The court told the jury that this language was susceptible of two different meanings,—one harmless, and the other defamatory,—and left it to the jury to determine from the evidence in the case "in which sense, within the meaning of the words, the persons to whom the notice was addressed, or persons who read the same, may have understood them"; at the same time saying that the burden was upon the plaintiff to show that the language was defamatory. If there was error in this, it was error in favor of the defendants. "Any words," says Odgers on Libel and Slander (page 21), "will be presumed defamatory which expose the plaintiff to hatred, contempt, ridicule, or obloquy, which tend to injure him in his profession or trade, or cause him to be shunned or avoided by his neighbors, * * * and * * * all words * * * which, by thus engendering an evil

opinion of him in the minds of right-thinking men, tend to deprive him of friendly intercourse and society." See, also, Newell, Defam. 67, 77; Townsh. Sland. & L. 21, and notes; 13 Am. & Eng. Enc. Law, 299; Fitzgerald v. Robinson, 112 Mass. 371; Morasse v. Brochu, 151 Mass. 568, 25 N. E. 74, 8 L. R. A. 524; Morey v. Association, 123 N. Y. 207, 25 N. E. 161, 9 L. R. A. 621; Byram v. Aikin (Minn.) 67 N. W. 807. The publication in question is to be considered in its entirety. So considered, there is in it, to say the least, a clear insinuation that the plaintiff was not a fit or proper person for the employés of the defendants to associate with, and, further, that if any of such employés should associate, trade, or deal with the plaintiff, they would be discharged from the defendants' employment. The complaint charges that the notice was so understood by the community in which it was published, and there was testimony given on the part of the plaintiff to the effect that persons who read the publication so understood it. Words used in a publication, even if not actionable in and of themselves, may become so if they convey a covert or hidden meaning, and are understood in their concealed sense by those who read them. Authorities supra. The court below left it to the jury to determine from all the facts and circumstances of the case whether the defendants meant to charge that the plaintiff was not a fit or proper person for their employés to associate with, and whether it was so understood by those who read it, and who, the evidence showed, resided in the little community in which the publication was made, and who knew the respective parties, and their circumstances and relations to each other. In this there was no error of which the plaintiffs in error can justly complain. The same observations equally apply to the alleged damage to the business of the plaintiff, unless it be true, as is contended on the part of the plaintiffs in error, that one man has the legal right to maliciously interfere with the business of another. We deny the soundness of any such proposition. No one can properly deny any man the absolute right to cease dealing, and to refuse to have business or other relations, with any particular person or persons; but no man, in our opinion, has the legal or moral right, from malice, ill will, or revenge; to command other persons to do so. Counsel for the plaintiffs in error have cited a number of cases to the effect that an employer has the right to interpose for the protection of those in his employ. We do not question that right. Nor do we dispute the proposition that an act legal in itself, and violating no right of another, cannot be made actionable on account of the motive which superinduced it. But every person in this country has the constitutional right of life, liberty, and the pursuit of happiness, so long as he keeps within the pale of the law. With many men,—perhaps in the case of a large majority,—the pursuit of happiness involves the pursuit of business enterprises of one kind or another. With what show of reason or justice can it be said that this right to lawfully pursue his own business —in the case at bar, that of buying and selling goods—can be legally interfered with by third parties, except by competition? As a matter of course, every business is legally subject to competition, which is not only right and proper in and of itself, but is also for the public

good. But it is, in our judgment, a clear violation of the right pertaining to every person engaged in an industrial enterprise for any other person, through malice, ill will, or revenge, to command or induce other persons to withdraw or withhold their custom from him, or otherwise maliciously interfere with his business. Motive does not count where one merely exercises his own right without violating any right of another, but when he does violate the right of another the motive of the act enters largely into the problem. The judgment is affirmed.