RALPH WARNER & others vs. BOWDOIN SQUARE BAPTIST
SOCIETY & another.

Suffolk.    November 21, 22, 1888. — January 5, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Religious Society — Trust — Devise of Pews — Lease.*

Land was bought and a meeting-house built thereon, partly from contributions of members of different Baptist congregations, "for the purpose of erecting a meeting-house for the use of a Baptist church to be afterwards formed to worship in said house," and partly from the proceeds of a mortgage placed upon the property. Subsequently a church was organized, the pews in the meeting-house were sold at auction, and the purchasers organized themselves into a religious society. A committee, in whose names the title stood, conveyed the property to this society by a deed, expressing no trust. The church maintained worship in the meeting-house for a long period, the society providing for the expense by taxing the pews. *Held,* that a trust in the property in favor of the church was not established.

A pew-holder and member of the society devised a large number of pews in the meeting-house to a missionary corporation of the same denomination, upon the trust that the "society and church" then "worshipping in said house" should "have the free use and control of the said pews and property as they now have, so long as the said church shall continue a religious ecclesiastical body holding the doctrines and sentiments in its articles of faith, and worship in said house," and with the provision, that if the church should disband, or be merged into or unite with another church to worship in another place, or if the house should be sold, then the trustee should hold the proceeds of the trust property for other specified purposes. The society afterwards leased the house for a term of three years, at a nominal rent, to such missionary corporation, which thereupon took possession. *Held,* that the trust, if not a trust for the benefit of the society alone, gave no right to a minority of the pew-holders, members of the society, or to representatives or members of the church, to ask for a cancellation of the lease, there being no attempt to interfere with the right of any individual pew-holder in his pew.

BILL IN EQUITY, filed on June 15, 1887, by Ralph Warner and Henry S. Brown, pew-holders of the Bowdoin Square Baptist Society, a committee of the Bowdoin Square Baptist Church, and two deacons thereof as such and in their own right as members of the church, against the Bowdoin Square Baptist Society and the Massachusetts Baptist Convention.

The bill alleged, that about 1840 a tract of land was purchased and a meeting-house erected, partly by means of contributions from members of different Baptist congregations and

partly with the proceeds of a mortgage placed upon the property; that the contributions were made " for the purpose of erecting a meeting-house for the use of a Baptist church to be afterwards formed to worship in said house"; that after the completion of the meeting-house a church was formed and was recognized by the denomination, and that it had continued to occupy the meeting-house as its place of worship until shortly before the filing of the bill; that soon after the organization of the church the pews in the meeting-house were sold at auction; that shortly thereafter the purchasers of pews organized themselves, as a corporation for religious purposes, as the Bowdoin Square Baptist Society, and that thereupon a building committee, in whose name the land had been purchased, conveyed the land and meeting-house to this society; that the society had levied taxes on the pews for the maintenance of public worship, but that worship had been under the charge and control of the church until about the year 1867; and that the society had constructed two stores in the basement of the meeting-house which had yielded a rental, and this rental had been used by the society in the maintenance of worship and in the care of the property.

The bill further alleged, that about the year 1873 many of the pew-holders had removed from the neighborhood of the meeting-house, and had ceased to be worshippers in the meeting-house; that from about that date pew taxes had ceased to be assessed, and that the meeting-house had been left to the use of the church; that from that time worship had been sustained by voluntary offerings from church members and others, and by the store rents mentioned above; that offerings were collected weekly and handed over to the treasurer of the society, and that he disbursed them, together with the store rentals; and that the church and congregation had contributed toward repairs and alterations of the meeting-house and furnishing the building about three thousand dollars, and had paid off a debt of the society of about nine hundred dollars.

The bill also alleged, that Asa Wilbur, who was for a long time prior to his decease a deacon of the church and a worshipper in the meeting-house, being desirous of maintaining public worship in the meeting-house, and of preventing any

attempt on the part of pew-holders no longer worshipping in it from selling or disposing of the property, purchased some sixty-four pews, and, subsequently to August, 1875, bequeathed them to the Massachusetts Baptist Convention, upon the trust that " The Bowdoin Square Baptist Church and Society, now worshipping in said house," are " to have the free use and control of the said pews and property as they now have, so long as the said church shall continue a religious and ecclesiastical body holding the doctrines and sentiments in its articles of faith, and worship in said house," and with the provision that if the church should disband, or be merged into or unite with another church, to worship in another place, or if the meeting-house should be sold, then the trustee should hold the proceeds of the trust property for certain other purposes specified in the testator's will.

The bill also alleged, that for one year prior to the filing of the bill no member of the society had been a member of the church ; that a large number of the original proprietors of pews had died since 1874, and that their title had passed to their representatives, not connected with the church and having no interest in it ; that the society itself had acquired title to a large number of pews ; that there were a large number of free pews ; that at a meeting of the society in November, 1885, a majority of the pew-holders, against the protest of a minority, voted to close the meeting-house, and that the meeting-house was closed ; that at this meeting the majority who voted for the closing " were persons who had not previously been members of said society or proprietors of said pews, and had no interest therein, but were so present by reason of the fact that a certain minority of said society, desiring to create a majority of votes in favor of its wishes to close said church, conveyed, or caused to be conveyed, to said persons, certain pews for a nominal consideration"; that said persons who had so acquired said pews, being some fourteen in number, were so present, and so voted to close said house of worship, and were a majority of the persons present at this meeting; that the church had, since the closing of the meeting-house, maintained worship elsewhere at its own expense; that at a meeting of the society in May, 1887, a majority of the pew-holders, composed of the same persons who had constituted the majority at the prior meeting, voted, against the protest

of a minority, to lease the meeting-house to the defendant convention, for three years, at a ·nominal rent, intending by this action to deprive the church of its right to worship in the meeting-house; that at this meeting the church was represented, and, without waiving any rights, offered to the society a guaranteed rental of one thousand dollars per annum for the term of three years ; and that the defendant convention accepted the lease.

The bill further alleged, that the plaintiffs were informed and believed that the defendant convention, in connection with the defendant society, was withholding the control and use of the pews from the church, and was intending to occupy the meeting-house for its own purposes, and to exclude the church organization from it, and to divert the property to the use of some person or persons other than the Bowdoin Square Baptist Church.

The prayer of the bill, so far as material, was that the society might be declared to hold the meeting-house " in trust for the benefit of said church organization," and that " said church organization " might " be declared to have the use of the property upon such terms as shall be just and equitable "; that the society might be enjoined from appropriating the meeting-house and the revenues of the building to any purpose other than the benefit of the church; that the lease to the defendant convention might be cancelled ; that the church might be decreed " to have the full right and the use and management" of the meeting-house ; that the society might be ordered to pay over the income of the property to the church, or its deacons for the time being, " for the maintenance of public worship by said church organization in said church edifice," and that the defendant convention might be enjoined from interfering in any way " with the full and free use of said sixty-four pews by said church organization."

The defendants demurred, among other grounds, for multifariousness and for want of equity.

The case was heard upon the bill and demurrer before *Devens,* J., who reserved it for the consideration of the full court.

*H. W. Chaplin,* for the Bowdoin Square Baptist Society.

*C. T. Russell,* for the Massachusetts Baptist Convention.

*B. F. Butler & E. M. Johnson,* for the plaintiffs.

HOLMES, J.   The only facts relied on to constitute a trust in favor of the Bowdoin Square Baptist Church, in respect to the

land on which the meeting-house stands, are that the steps were taken which are usual in this Commonwealth when a body of persons intend to build a meeting-house for public worship. Contributions were taken up from the members of the different congregations of the same denomination, "for the purpose of erecting a meeting-house for the use of a Baptist church to be afterwards formed to worship in said house." Land was bought, and a meeting-house built with the funds collected, aided by a mortgage of the land. Then a church was formed. Then the pews were sold by auction, and the proprietors formed a corporation under the St. of 1840, c. 62. Finally, the committee that held the land conveyed it to the corporation by a simple deed, expressing no trust. There are averments of certain expenditures by the church, which allowed it to use the meeting-house, but these were not relied on, and do not affect the case.

It is too well settled to admit of argument, that the foregoing facts do not make the legal corporation a trustee for the church, either by force of Pub. Sts. c. 38, § 3, (Gen. Sts. c. 30, § 3, Rev. Sts. c. 20, § 3, St. 1834, c. 183, § 1, St. 1799, c. 87, § 1,) or otherwise. *Clark* v. *Quincy Evangelical Society*, 12 Gray, 17. *Baker* v. *Fales*, 16 Mass. 488. *Stebbins* v. *Jennings*, 10 Pick. 172, 186. *North Bridgewater Congregational Society* v. *Waring*, 24 Pick. 304. *Parker* v. *May*, 5 Cush. 336, 349. *Attorney General* v. *Merrimack Manuf. Co.* 14 Gray, 586. *Packard* v. *Ames*, 16 Gray, 327. *Hamblett* v. *Bennett*, 6 Allen, 140, 145. *In re New South Meeting-House*, 13 Allen, 497. *Old South Society* v. *Crocker*, 119 Mass. 1, 25. In whatever sense and to whatever extent the Bowdoin Square Baptist Society is charged with a duty to apply its property for purposes of public worship, public worship "is a parish purpose, and not a church purpose." *Parker* v. *May*, 5 Cush. 336, 347. The cases generally present questions between parishes and churches, but the argument is stronger in the case of incorporated proprietors, if for no other reason, because it is expressly provided by St. 1840, c. 62, § 3, (Pub. Sts. c. 38, § 28,) that " the annual income of all the real and personal estate held by such corporation shall be applied to parochial purposes."

It follows, that those of the plaintiffs who sue only in right of the church have no case against the society on general grounds.

They make a further claim on the ground that the defendant lessee, the Massachusetts Baptist Convention, owns certain pews bequeathed to it by one Wilbur, with the following provision : " The Bowdoin Square Baptist Church and Society, now worshipping in said house, to have the free use and control of the said pews and property as they now have, so long as the said church shall continue a religious and ecclesiastical body holding the doctrines and sentiments in its articles of faith, and worship in said house." Conceding for the moment that this is not a gift for the benefit of the society alone, the gift is a gift of pews, and the rights conveyed to any one are only pew-holders' rights, and these we have to consider with reference to the other plaintiffs.

We assume that the plaintiffs Warner and Brown intend to describe themselves as pew-holders. We assume that, as pew-holders, they are also members of the corporation. In *In re New South Meeting-House*, 13 Allen, 497, it was decided that the majority of the corporation could not sell the church property, and divide it among the members as of right, against the will of a minority, who insisted that it should still be applied to purposes of public worship, and that if the court had power to authorize them to do so, which was doubted, it would not, unless a clear case of expediency was made out. See also *Old South Society* v. *Crocker*, 119 Mass. 1, 27. It may be asked whether, if the majority cannot divert the meeting-house from purposes of public worship by a sale and a distribution of the proceeds among themselves, they can do so any more by a conveyance of it to a third person for a nominal consideration. Perhaps it would be enough to say, that, so far as the question has any relevancy to this case, it is settled as against a minority of members not pew-owners by *Clark* v. *Quincy Evangelical Society*, 12 Gray, 17, which is not necessarily overruled by the cases last cited. It will be noticed further, that the rights attributed to the minority by *In re New South Meeting-House* and *Old South Society* v. *Crocker* are attributed to them as members of the corporation, and not as pew-owners.

But however this may be, the case made by the bill, and the relief sought, do not raise the question. It is not alleged or suggested that the purpose or effect of the lease is or can be

to divert the use of the premises from public worship. The lessee is a corporation bound to .apply its property " to the sole use and purpose of diffusing Christian knowledge," (St. 1807, c. 62, § 2,) and is under the control of the Baptist denomination. What is alleged is, that it is intended to deprive the Bowdoin Square Baptist Church of its right to worship in the meeting-house. No relief is sought against the use of the meeting-house for other purposes than those of public worship, but the prayers are directed mainly to the restoration of the Bowdoin Square Church to the use and management of the property. The plaintiffs' construction of their bill is that this is its only object; for they base their answer to the objection of multifariousness on the proposition that the only purpose of the bill is to enforce a trust against the society on behalf of the church. If that is the only object of the plaintiff pew-owners, the answer is, that, if the church as such has no right to such use and management, it cannot be that a member of the corporation, or a pew-owner, who has not even the interest of membership in the church, has a right to require that it shall be allowed that management. Indeed, no such argument was addressed to us.

The plaintiffs' construction of their bill, which we accept so far as material, makes it unnecessary to consider what would be the rights of a pew-owner who was disturbed in the use or occupation of his pew. There is no averment that any such disturbance is proposed, or that the estate of any pew-holder is in danger of being lost; *Clark* v. *Quincy Evangelical Society*, 12 Gray, 17; and if there were, it is not the object of the bill to prevent it.

So as to the prayer that the Massachusetts Baptist Convention may be enjoined from interfering with the full and free use by the church of the pews bequeathed to the convention. We are not asked to deal with this prayer on the footing of a distinct case against the Baptist Convention alone, or otherwise than as incidental to the general attempt to establish a trust of the land in favor of the church. But, further, as we have decided that the society does not hold its property generally in trust for the church, the bequest of these pews gives the society equal rights in them with the church, and the argument is strong, that, so far as the convention is a trustee, it is a trustee for the society

alone. See *Baker* v. *Fales*, 16 Mass. 488; *Wood* v. *Cushing*, 6 Met. 448.

It might be suggested that this lease required the sanction of this court, on the principles laid down in *Old South Society* v. *Crocker*, 119 Mass. 1. We do not consider whether what is there said as to sales applies to a lease like the present, or to corporations of proprietors under St. 1840, c. 62. It is enough that the suggestion is foreign to the purposes of the bill, and that, if it was made, the plaintiffs would not be entitled to relief by injunction, when, so far as appears, there is no reason why any discretionary power that the court may possess should not be exercised in favor of the lease upon application by the society.

The allegation in the bill, to the effect that among the persons who voted for the lease were some to whom pews were conveyed for a nominal consideration, does not show that they did not get a good title, or that the majority of those present and voting other than the above mentioned were not in favor of the lease; *First Parish in Sudbury* v. *Stearns*, 21 Pick. 148; *Christ Church* v. *Pope*, 8 Gray, 140; or that the votes were challenged as illegal when they were received. *First Parish in Sutton* v. *Cole*, 3 Pick. 232. It is unnecessary to consider whether these matters, if alleged, would be material to this bill.

*Demurrer sustained.*