## DEACONS OF FIRST UNIVERSALIST CHURCH OF NORTH ADAMS, PETITIONER.

Berkshire, August, 1905.

*Condition and Conditional Limitation — Limitation Void — Qualified Fee and Fee Absolute — Grant to Church — Charitable Trust — Private and Public Charities — Power to Alienate.*

In this case there is a deed to the Deacons of the First Universalist Church of North Adams as a body corporate under the statute of pious donations, in fee, " subject to the following conditions, namely: " that no encumbrances or liens shall be placed upon the property; that it shall be kept insured; " that they shall not alienate said property, but shall hold same perpetually to the use, benefit and enjoyment of said church; " that buildings shall be kept in repair; and that religious worship shall be maintained by the church or some other society associated therewith according to the usages of the Universalist denomination, and the conveyance is made " upon the further express condition that on the breach of any of the foregoing conditions, all the right, title and interest of the aforesaid grantees shall terminate and the said-grantees shall be divested and the same shall become vested in the legal heirs of the grantor."

The grantor subsequently died testate, leaving his wife as his residuary devisee. She has subsequently deceased, and her heirs have been cited and a guardian ad litem appointed to represent their interest. No breach of any of the covenants has yet occurred.

It is argued that this is not a deed upon a common law

condition, because there is no right of reverter in the grantor, but that it is a conditional limitation to a class other than that which would be entitled to the right of reverter under a condition, namely: to the heirs of the grantor and not to the heirs of the grantor's residuary devisee. Brattle Square Church *v.* Grant, 3 Gray, 142. Treating the deed as one upon a conditional limitation, it is then argued that the limitation over is void both as constituting on the whole a simple restraint against alienation, and also as coming under the rule against perpetuities.

On rejecting the limitation over, however, the petitioner further urges that there is left in them an absolute estate, and not merely a base fee with a right of reverter in the heirs of the grantor as in the earlier Boland deed to this same church. First Universalist Church *v.* Boland, 155 Mass. 171. In the Boland deed the grant itself, after the rejection of the limitation over, was a grant of a qualified fee only and not of a fee absolute. The technical words apt and necessary for the creation of a base fee were used in the grant. In the case at bar the grant in itself is a grant in fee. No case has been cited by the respondent heirs of the grantor, nor do I find any, in which a base fee has been created by the use of such phraseology as " provided that " or " upon condition." Such a phrase as " so long as " or " until " seems to be essential to such an estate. The distinction is a radical one. The only thing conditional in the limitation upon a base fee, is the contingency of the happening of the certain event which fixes the limitation of the estate. It is an estate upon a " natural limitation " as Professor Reeves calls it, one that has a natural end. Reeves, Real Property, Section 429. Such an estate may be for a term of years, or life, or in fee. Except for the event which defines its limit, and until defeased by reason of reaching that limit, it is however a definite and full estate. There seems to me to be a clear distinction between the phraseology

which is apt to create a definite estate to endure until the happening of an event upon which it is to determine, and expressions which create an estate that is in its nature always contingent, uncertain and conditional.

Professor Gray seems to have overlooked this distinction when he declares that the two cases of Brattle Sq. Church *v.* Grant and First Church *v.* Boland cannot be differentiated, that there is no possibility of reverter in the one case if not in the other, and that the former is still law, while the latter (inferentially.) is not. Gray on Perpetuities, 2nd ed., Sec. 40. With great deference to Professor Gray it seems to me that the difference here pointed out constitutes not only the distinction between the Boland case and that of the Brattle Square Church, but between the Boland case and the one now at bar. In the Boland case there was a reverter because the estate was a purely limited estate, a base fee, an estate " so long as," and so long only as, it was used in the manner prescribed. When it reached its natural end, (the gift over being void) there was reverter to the grantor. In the Brattle Square Church case and in the case at bar, the estate although on condition, was nevertheless, except for the condition, a fee absolute, and the limitation over being void and the force of the condition thereby failing, nothing but the fee simple remained. Wells *v.* Heath, 10 Gray 17, 26.

As to the question whether the property under this deed is held strictly in trust, it does not seem to me that the recent case of Osgood *v.* Rogers, 186 Mass. 238 can be construed, or can have been intended, to go to that extent. The language in that case, that a gift to the deacons of a church as trustees and their successors forever for the support of the church creates a public charitable trust, can hardly have been intended to go to the extent now suggested, that in every such instance qualification as trustee and license of court to sell the trust estate, will be necessary.

The petitioner argues that the word " generally " used

by the Court in the opinion in Osgood *v.* Rogers means " usually; " that the dictum and the decisions therein cited are to the point that simple gifts to a religious society may be charitable trusts, not that of necessity they must be charitable trusts. The petitioner contends that the cases draw a marked distinction between gifts where the sole purpose is to benefit a particular church or society, and where the purpose is for general charitable or moral or religious purposes, though to be effected through the particular organization selected. Where the grantee or devisee is itself the sole and ultimate object of the donor's bounty, and not merely a conduit or means to a general public benefit, then the gift is clearly a private rather than a public charity. " Gifts for the erection of a house for public worship or for the use of the ministry, may constitute a public charity if there is no definite body for whose use the gift was intended capable of receiving, holding and using it in the manner intended. To give it the character of a public charity there must appear to be some benefit to be conferred upon, or duty to be performed towards, either the public at large or some part thereof, or an indefinite class of persons. Going *v.* Emery, 16 Pick. 107, 119. Perry on Trusts, 710. Saltonstall *v.* Sanders, 11 Allen, 446. But when there is a body or a definite number of persons, ascertained or ascertainable, clearly pointed out by the terms of the gift to receive, control and enjoy its benefits, it is not a public charity, however carefully and exclusively the trust may be restricted to religious uses alone. Attorney General *v.* Federal Street Meetinghouse, 3 Gray, 1, 49. Parker *v.* May, 5 Cush. 336. Property devoted to the support and maintenance of public worship, which is public only in the sense that it is open to the public by courtesy, in accordance with the usual practice of all churches in this Commonwealth, does not thereby become a public charity." Old South Society *v.* Crocker, 119 Mass. 1, 22. The greater part of this citation from the

decision in Old South Society *v.* Crocker was quoted with approval by the Court in Attorney General *v.* Clark, 167 Mass. 201, and the Court there added " these principles are decisive of the present case." In Warner *v.* Bowdoin Square Baptist Society, 148 Mass. 400, the Court says " in whatever sense and to whatever extent the Bowdoin Square Baptist Society is charged with a duty to apply its property for purposes of public worship, public worship is a parish purpose and not a church purpose."

Of course gifts to religious societies may be charged with charitable trusts; but " in all the cases of charitable uses, or nearly all, the persons ultimately to be benefited by the donations are uncertain," or are persons other than the trustee body and those immediately affiliated with it. Going *v.* Emery, 16 Pick. 107, 119. McAllister *v.* Burgess, 161 Mass., 269. Bartlett petitioner, 163 Mass. 509. Minns *v.* Billings, 183 Mass. 126.

" But it was urged in argument that it is usual in all Christian societies and places of public worship, that all persons who choose may in fact attend, and that it is usual to set apart free seats, and so the public are benefited. The fact is undoubtedly so, that persons who desire it may usually attend; but it is matter of courtesy, and not of right. On the contrary, any religious society unless formed under some unusual terms, may withhold this courtesy, and close their doors, or admit whom they please only; and circumstances may be easily imagined in which it would be necessary to their peace and order that they should exercise such right. Were it otherwise, and were the occasional permission of all persons to enter churches, and listen to preachers, to be regarded as a public or general right, every parish, territorial or poll, every society formed by the incorporation of proprietors or pewholders must be considered as a public charitable institution to be regulated and controlled by an information filed by the attorney general at the relation of any

person desirous of attending the religious services of such societies." Attorney General v. Federal Street Meeting-house, 3 Gray, 1, 50. " In looking at the church and the deacons together as one aggregate body, it appears, that the church holds its property as corporate property is held, not in trust, but in its own right, to be appropriated to the uses and purposes for which such aggregate body is constituted." Parker v. May, 5 Cush. 336, 348.

To interpret Osgood v. Rogers as suggested by the Examiner would be to render every church title in the language of Professor Gray " a perpetual trust in which case the plaintiff (church) without the aid of the Court could not make a good title." This would tend to unsettle many valuable titles, and would seem to be contrary not only to long established custom but to the spirit at least of the statute. In the case at bar the grant is by its terms to the Deacons " as a body corporate," which brings them necessarily and directly within the provisions of the statute of donations and conveyances for pious uses. The alienability of lands so held is regulated by section 6 of that act. Rev. Laws, chap. 37, sec. 1 and 6.

The solution of the difficulty seems to me to be found in the distinction pointed out in Attorney General v. Merrimac Mfg. Co. between such a public charity as requires an information in the name of the Attorney General for its enforcement, and such a trust for religious purposes as a Court of equity will if necessary take cognizance of. " Public worship may mean the worship of God conducted and observed under public authority; or it may mean worship in an open or public place, without privacy or concealment; or it may mean the performance of religious exercises under a provision for an equal right in the whole public to participate in its benefits; or it may be used in contradistinction to worship in the family, or the closet. In this country, what is called public worship is commonly conducted by voluntary

societies, constituted according to their own notions of ecclesiastical authority and ritual propriety, opening their places of worship, and admitting to their religious services such persons, and upon such terms, and subject to such regulations, as they may choose to designate and establish. A church absolutely belonging to the public, and in which all persons without restriction have equal rights, such as the public enjoy in highways or public landings, is certainly a very rare institution, if such a thing can be found. But in the absence of any contract or gift, (and a gift is strictly a contract), by which the legal or equitable estate of the owner of the fee of the land is itself diminished, it has certainly never been held in this Commonwealth, and we do not know that it was ever suggested, that the power of disposing of the property, or of changing the use to which it should be applied, did not remain as absolute and unquestioned as in the case of any other real property. We know no rule of law which would prevent the sale of any church by its owner, and the use of the proceeds for any purpose to which that owner might lawfully appropriate money, merely because it is a church, if the title is subject to no trust, and is unincumbered. We suppose that churches of all denominations have been, certainly they may have been, sold by their owners, notwithstanding their consecration or dedication to religious uses. The consecration is, and is to be regarded as, a religious ceremony, and not as an act qualifying the estate in the land. But on the other hand donations, grants and devises have been sustained and executed by courts of equity as appropriations to pious and charitable uses, where the element of public right or interest could hardly be found; such as for a church, or the support of a pastor or teacher, of a particular and perhaps a very small denomination; or for the benefit of a particular district or territory; or of persons connected with a designated institution; or of a particular employment, age, sex, color, descent or nation.

It would seem, indeed, that there must be some strictly public object of bounty, or such indefiniteness in the designation of those who are beneficially interested, that no persons competent to sue can claim a direct interest in themselves, to authorize a proceeding by information in the name of the attorney general to enforce the due administration of the charity. But the dedication or appropriation to pious and charitable uses may be complete, so that the use will be established and the trust enforced by a court of equity, where the object is not a distinctively public one." Atty. Gen. *v.* Merrimac Mfg. Co., 14 Gray 586, 602.

If the church organization should ever cease to exist and the church and society vote to discontinue religious worship and make proper disposition of their property, as in Osgood *v.* Rogers, equity would doubtless intervene on the ground of a public charitable trust as in that case, and it is in such a view of the case that the language of that decision is to be interpreted. No more specific trust, however, need be set forth in the decree here than is necessarily imported in the title itself of the petitioning religious corporation with the duties and incidents implied thereby.

There may be a decree for registration of title in the petitioner corporation in fee simple.

So ordered.

C. H. Wright, C. A. Parker for petitioner.

E. D. Getman, E. N. Carpenter, E. L. Bates, E. C. Burbank for respondents.

Note: But see Sears *v.* Attorney General, 193 Mass. 551, ad fin., sustaining Osgood *v.* Rogers as directly overruling Parker *v.* May and Old South Society *v.* Crocker. Quaere: How far Sears *v.* Atty. Gen. affects the decision in this case.