REFORMED METHODIST SOCIETY OF DOUGLAS *vs.* FRANCIS M. DRAPER & others.

An organization claiming to be the legal organization of a religious society, but which was effected at a meeting called by a justice of the peace without it appearing that the society was unable to assemble in the usual manner, or that there were no assessors or standing committee, or that any application had been made to the assessors or standing committee to call such meeting and had been refused, will be perpetually enjoined from taking possession of the society's property as against a *de facto* organization which prior to such meeting was in peaceable possession of the property and undisturbed exercise of the functions of the corporation.

BILL IN EQUITY filed December 31, 1866, praying for an injunction on Francis M. Draper, Jasper Rawson and Henry

Mowry, against hindering the complainants or the Reverend Walter Wilkie, their clergyman, in the free use of the meeting-house of the Reformed Methodist Society of Douglas. The answer raised the only issue in the case, namely: Which was truly the Reformed Methodist Society of Douglas, the organization represented by the complainants who filed their bill in the society's name, or that represented by the respondents, who alleged in their answer that they were the true prudential committee of the society, and entitled, as such, to possession of the meeting-house?

The case was referred to a master, and by his report the following facts appeared:

The society was organized on July 14, 1842, when a prudential committee of five members was duly appointed, three of whom were still living, and had always remained members of the society. From 1864 to the time of bringing this bill the Reverend Walter Wilkie preached in the meeting-house, and his salary was paid by the society. During the latter part of his ministration the society became divided in sentiment into two parties, represented by these complainants and respondents respectively; but the open division into two separate organizations did not occur until in December after the annual meeting of the society for the year 1866, which was held on March 10. The organization effected at that meeting was the one represented by the complainants, and it continued through the year in peaceable possession of the meeting-house until some time near the end of December.

The master found as fact that the respondents Draper and Mowry were members of the society under the old organization, but that Rawson withdrew from membership in 1862; and it appeared that on December 10, 1866, the three respondents, together with three other persons, who were members of the society, requested in writing Adolphus F. Brown, a justice of the peace for Worcester, "to issue a warrant calling a meeting of the members of said society according to the provisions of the General Statutes," but alleged in their writing no cause for their application; that on the same day Brown issued his warrant for

the notification of a meeting to be held on December 17, but that the warrant set forth no cause for the application on which it was issued; and that on December 17 the meeting so called was held, at which the respondent Mowry was chosen clerk and the organization was effected which is represented by the respondents, who at a subsequent meeting under the same organization, held on December 26, were chosen a committee to supply the pulpit.

And it further appeared that on December 21, a meeting of the society under the old organization was notified to be held at the meeting-house on the afternoon of December 29, and that about twenty-one members of the society assembled at the appointed hour for the purpose of holding the same, but were met by the respondents and their associates, who forcibly resisted and successfully prevented their entrance into the meeting-house, whereupon the meeting was organized on the steps of the building, and a committee of three persons was chosen " to ascertain and maintain the rights of the society in its meeting-house," under whose direction this suit was begun.

The master further found as fact that a majority of members of the society who were members thereof previously to December 1866, adhere to and act with the organization represented by the complainants, and have never acted with the organization initiated at the meeting called by Adolphus F. Brown; and also that shortly before the beginning of this suit the respondent Draper and other persons threatened to shut up the meeting-house.

And it appeared by the records of the society, which were introduced in evidence before the master, that there were informalities in various of the annual meetings since the original organization of the society in 1842; by force of which informalities the respondents contended that the organization represented by the complainants was wholly void, and that they themselves were justified in effecting a wholly new organization in the manner above set forth.

The case was reserved by *Foster*, J., for determination by the full court.

*G. F. Hoar & T. L. Nelson,* for the complainants.

*P. C. Bacon & A. Dadmun,* for the respondents.

FOSTER, J.   We entertain no doubt that the organization which had been maintained by this parish during the successive years of its existence was amply sufficient to protect its *de facto* officers in the possession of the parochial property against tres-passers and mere wrong-doers.   Persons who are in the open and peaceable exercise of the powers and duties of officers in a corporation are presumed to have been duly elected and to be entitled to the positions they occupy.   Strangers cannot be permitted to contest their title or to impeach the validity of their acts, by showing irregularities in their election or in any of the antecedent proceedings of the corporation.   *Middlesex Husbandmen* v. *Davis,* 3 Met. 133.   *Narragansett Bank* v. *Atlantic Silk Co.* 3 Met. 282.   *Farmers' & Mechanics' Bank* v. *Jenks,* 7 Met. 592.   *Blandford* v. *Gibbs,* 2 Cush. 39.   *Commonwealth* v. *Gearing,* 1 Allen, 595.   *Topping* v. *Bickford,* 4 Allen, 120.   Angell & Ames on Corp. §§ 137–144, 286, 287.   The defendants can justify their attempt to take possession of the meeting-house only on the ground of the superior validity of the organization which they have made and under which they assume to act.

It is not too much to say that parties who have undertaken to set aside and usurp the place of a previously existing *de facto* corporate organization which they found in the peaceable possession of the property and the undisturbed exercise of the functions of the corporation, must be held to prove strictly the regularity of the proceedings under which they act.   If they fail to do so, their paper organization will place them in no better position than that of mere wrong-doers. .

The parish meeting under which the defendants rely was called by A. F. Brown, a justice of the peace, December 10, 1866, at the written request of six persons, all but one of whom were members of the society.   No cause for this application was assigned in it or in the warrant thereupon issued by the magistrate.

This proceeding, if valid, must find its sanction either in the **fact** that the religious society was " unable to assemble in the

usual manner;" Gen. Sts. *c.* 30, § 4; or that there were no assessors or standing committee of the parish; or that these officers unreasonably refused to call a meeting. Ib. § 12. The assessors or standing committee of a religious society have like authority for calling meetings as selectmen have for calling town meetings. Ib. § 11. All parish officers, except the moderator of a parish meeting, continue in office till the next annual meeting, "and until others are chosen and qualified in their stead." Ib. § 9.

It appears by the report of the master that three of the five members of the first prudential committee ever chosen were living and members of the parish. If no successors have been chosen and qualified in their stead, these gentlemen still con tinued to be the committee of the parish at the date of the war rant issued by Mr. Brown. The last committee duly elected and qualified must have continued in office. And the office could not have been wholly vacant unless by the death or resignation of some subsequent committee, of which there is no evidence in this case. There must therefore have been some persons *in esse* holding the official position of a standing committee, to whom the defendants ought to have applied to call the meeting they wished for. Of course, there could have been no unreasonable refusal to call a meeting in the absence of a request to do so. We conclude, therefore, that no exigency is shown for the intervention of a justice of the peace to call a parish meeting; and this result undermines the entire foundation of the defendants' organization.

We do not decide that a meeting irregularly called by a justice of the peace would be wholly void, if its proceedings were acquiesced in by the members of the society, and the officers chosen were allowed peaceably to assume their positions and take possession of the corporate property. In that case, especially after acquiescence for any considerable length of time, the proceedings of such a meeting would create a *de facto* organization, and the officers chosen by it would become clothed with the same powers as if formally elected. But the defendants were irregularly chosen, their claims have been resisted from the

beginning by the prior organization, and their only possession of the property has been obtained by force. Under such circumstances, they must be treated as mere usurpers, who do not come in under color of right, but by violence and in contempt of all right whatever. The presumptions arising from open, peaceable and continued possession of the property and exercise of the corporate functions, are all adverse to them and in favor of the plaintiffs.

These views render it unnecessary to consider minutely the objections made to the various meetings and elections held by this society for many years previous to the organization attempted by the defendants. Whatever defects and irregularities they may have discovered in the meetings or records of the parish, it is not in their power to take advantage of them in justification of their attempted forcible seizure of the meeting-house, or in defence to the present suit brought to protect the corporation in the possession of its property.

A perpetual injunction is granted in conformity with the prayer of the bill.