CANADIAN RELIGIOUS ASSOCIATION & others *vs.* ALEXANDER PARMENTER & others.

Worcester.   September 30, 1901. — February 26, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Religious Society*, Expulsion of members, Removal of officers, Powers of trustees, Rights of minority, Notice of meeting, Church government.

If an incorporated religious society at a regular meeting, called for the purpose of revising the membership of the society, votes under and in accordance with an article of its constitution, that certain persons whose names are crossed off from the list of members have worked against the interests of the society and that they are for that reason expelled, and, if the persons thus dealt with had proper notice and opportunity to be heard, the action of the society is final and cannot be revised by showing in another tribunal that these members had not in fact worked against the interests of the society.

An incorporated religious society, of which the constitution does not provide a method for removal of its officers, cannot remove its trustees or elect new ones at a meeting, called for the purpose of expelling from membership the persons who are the present trustees, but without notice that the removal of officers or the choice of new officers would be brought up.

The powers of the trustees of a religious society under Pub. Sts. c. 38, § 10, are confined to managing the prudential affairs of the society, and they have no power to close its church because in their judgment to keep the church open would be to defeat the purpose for which the society was formed.

If a church of a religious society is held in trust for the use of all the members, the society by a majority vote cannot close the church against the wishes of a minority, who wish to continue worshipping there in accordance with the terms of the trust.

The trustees of a religious society, who had ordered that the church of the society be closed, undertook to call a meeting of the society. A meeting was held, at which it was voted, that the church should remain closed until further orders from the trustees. The warrant for this meeting was undated, bore no return of publication or of service and contained no direction as to where it should be posted. The records of the society disclosed nothing as to notification or posting, and the record of the meeting did not recite that it was called by any warrant or notice, or that it was duly held. The constitution of the society required, that meetings should be called by the clerk upon a warrant of the trustees by a certified notice published at least seven days before the meeting and posted at the regular place of meeting of the society or at a place mentioned in the warrant. The meeting was not an annual or stated meeting, and it appeared, that those who desired that the church should remain open did not attend the meeting, and two days later filed a bill in equity in the name of the society to enjoin the trustees from closing the church. *Held,* that the meeting was not duly notified, and that all action taken thereat was invalid and of no effect.

A religious society, organized under Pub. Sts. c. 38, in its constitution declared the objects of the corporation to be " to build a church for the public advancement of the worship of God and to insure religious instruction on Sundays." The members who organized the society were Roman Catholics, and their purpose was to have the church under the government of the Roman Catholic Church; but the Roman Catholic bishop of the diocese denied their request for a priest as pastor, and they procured a pastor for themselves who performed the ministrations of a priest of their church. Thereupon the bishop notified them that those who continued attending the church would be excommunicated. A considerable number of the members still attended and wished to continue doing so, but the trustees of the society closed the church, and the attending members brought a bill in equity to enjoin them from closing it. *Held,* that under the statute the bishop had no power over the society or its members, and that his action did not prevent the society from lawfully continuing to exercise its functions as a religious corporation or its members from maintaining their religious worship, and the trustees were enjoined from closing the church building against any religious services held by any members of the society, for the public advancement of the worship of God or to insure religious instruction on Sundays.

BILL IN EQUITY by a religious society organized under Pub. Sts. c. 38, § 24, having a house of worship called St. Anne's Church in the town of North Brookfield, and three persons alleged to be the trustees of that society, against three defendants, to restrain them from acting as trustees of the society and from closing the church to the usual religious services held therein or in any way interfering with those services or exercising control over the property of the corporation, filed November 27, 1900.

In the Superior Court, *Gaskill,* J. reserved the case, upon the bill and answer and a master's report and the exceptions of both parties thereto, for the consideration of this court. The facts as

found by the master appear in the opinion.    The master stated, that he did not report the evidence, as no request therefor was made by the counsel either for the plaintiffs or the defendants.

*H. E. Cottle*, for the plaintiffs.

*T. Howard*, for the defendants.

BARKER, J.    The circumstances out of which this suit has arisen are these.    A number of French people living in North Brookfield where a Roman Catholic church in regular standing was already established, having formed a voluntary religious society for the purpose of building a house of worship and holding religious services therein, afterwards became incorporated under the provisions of Pub. Sts. c. 38, § 24, by the name of the Canadian Religious Association.    The object of the corporation as stated in the document called its constitution, and which is in effect its code of by-laws, was "to build a church for the public advancement of the worship of God and to insure religious instruction on Sundays."    The constitution provides for a moderator, clerk, treasurer, auditor, and three syndics or trustees.

The syndics or trustees are clothed with the powers conferred upon standing committees of religious societies by Pub. Sts. c. 38, § 10.    One article of the constitution provides that any member acting against the interest of the society may be expelled from it at any meeting by a vote of two thirds of the present voting members.    Another article provides for keeping an account of the individual contributions made to the society by its members, and, if the society votes to disband, for the conversion of its property into money and the division of the money among the contributing members, their heirs, executors, administrators or assigns, the distribution to be made *pro rata* according to the amounts individually contributed.

After organizing under the statute and choosing officers, the society raised money, built a house of worship, engaged a religious teacher and held services for the worship of God and for religious instruction.    The people who organized this society were Roman Catholics, and, while there was no such statement in the constitution, their purpose was to have a French church of the Roman Catholic faith, with a French Roman Catholic priest as pastor, and under the same general government and authority as other Roman Catholic churches.

Before the incorporation and before the building of the church, the voluntary association had made application to the Roman Catholic bishop at Springfield for a French priest to act as their pastor.    This application was denied by the bishop because he did not approve the establishment of another Roman Catholic church at North Brookfield.    Notwithstanding this the people went on and procured the incorporation, purchased land for a building site and cemetery, and erected and furnished a church building, hoping that the bishop would approve, send them a pastor, and recognize them as a church subject to the Roman Catholic church government and entitled to its privileges.    After building the church, they renewed their application to the bishop and he again denied it.    They then engaged a pastor who came and settled in North Brookfield, and has been and still is with them, performing the ministrations of a priest for their church. Subsequently to the settlement of the pastor, the bishop notified them that those who continued to attend the church would be excommunicated.

Some of the members left and again attended the established church, others attended nowhere, and a considerable number remained with the new church and have continued to support their pastor.    Because of the bishop's order of excommunication the three defendants, who were the syndics or trustees of the society, closed and fastened the doors of the church building, and thus for a time prevented religious worship therein.    After this others of the society who wished to continue religious services in the building opened its doors and have maintained possession of it, and services have been since held in it with the pastor officiating as before.

The defendants having been asked to call a meeting of the society and refused to do so, a meeting was called by a justice of the peace.    One article of the warrant calling this meeting was this: "Article V.    To see if said association will vote to revise its list of membership."    At this meeting and at an adjournment thereof it was voted that the church be opened for religious services by the pastor, that only persons regularly attending there be considered members of the society, and that any one retiring from the church be considered as leaving the society, that his name be crossed off the list of members, and

that the list of members be revised accordingly.  A committee of three was chosen with power to revise the list of members accordingly, and the meeting was adjourned to give the committee time to revise the list of members.  At the adjourned meeting the committee reported in writing a list of the members as revised by the committee, and also the list of names crossed off by them from the old list of members, for having left the church and worked against the interest of the association. Thereupon the meeting unanimously accepted the report of the committee as it had been made, and then voted that new officers be elected to fill the vacancies caused by the revision of the list of members.  The list of members whose names had been crossed off as having left the church and worked against the interest of the society included the moderator, clerk, treasurer, and the syndics or trustees, and the meeting chose new officers in their places, the three persons who join with the association in their present petition being so chosen as the syndics or trustees.

After this meeting the defendants, claiming still to be the trustees of the society, served a notice upon the pastor that they had voted to close the church, and that his services would no longer be required there, and issued a call for a meeting of the society, at which it was voted that the society would take possession of its furniture, hand over the keys of the church to the treasurer, and that the church should remain closed until further orders from the trustees.  This meeting was held on November 21, 1900, and, on November 27, 1900, the present petition in equity was brought, in the names of the corporation and of the persons claiming to have been chosen trustees, against the trustees originally chosen.  During its pendency the church has remained open for the usual services under an order of the Superior Court.

The petition was referred to a master, and is before us by a reservation to this court upon the pleadings, the master's report and the exceptions of both parties thereto.  The evidence is not stated in the report, neither party having requested the master to state it.  He finds, subject to certain questions of law as to the calling of meetings and the votes passed, that the votes revising the membership and expelling the old officers and

choosing the new ones were void; that the defendants are still the trustees of the society, and that the three individual plaintiffs are not its trustees; that the present membership of the society is composed of the persons of full age whose names appear of record as members upon its books, regardless of the action purporting to revise the membership; and that the defendants exceeded their powers in closing the church, and that it should be kept open for religious services so long as a minority of the members of the society object to the closing of the church and desire to worship therein, it being held in trust for the use of all the members; also that the refusal of the bishop to approve the doings of the society does not prevent it from continuing to exercise its functions as a religious society, nor its members from maintaining their religious worship, and that a considerable number of the members of the society still object to the closing of the church.

The first exception to the report on the part of the plaintiffs is to the master's refusal to make certain rulings requested by them as to the effect of the petition and answer. No particular in which this refusal was prejudicial to the plaintiffs is pointed out by their brief, and none occurs to us. This exception therefore is overruled.

The second exception of the plaintiffs is to the finding that the action of the meeting called by the justice of the peace worked no change in the membership of the association. This finding is contained in paragraph 14 of the report. The fifteenth article of the constitution provided that "Any member acting against the interest of the society, may be expelled from the association, at any meeting by a vote of the two thirds of the voting members present." The warrant by which the meeting was called had an article which in general terms gave notice that the membership of the society might be revised at that meeting. The appointment of the committee, its report and the action of the meeting upon the report were a plain adjudication on the part of the society that the persons whose names were crossed off from the list of members had worked against the interests of the society, and that they were expelled therefor as provided in Article XV. The master's finding that this action was not effectual to expel the members whose names were dropped is put by

him solely upon the ground that the evidence presented to him did not show that they had left the church and worked against the interests of the association.   But if the action of the association was regular and included proper notice to the members whose names were dropped and a proper opportunity for them to be heard, the action of the association was final, and cannot be revoked or reversed in a collateral proceeding merely for the reason that the evidence produced at the hearing of that proceeding does not show that the members were in fact guilty of the conduct of which the association at a proper hearing found them guilty and adjudged that they be expelled.   In the absence of any special provision of statute law, the courts in such cases are not appellate tribunals, and if the society acted regularly, giving due notice and opportunity to be heard, it is immaterial that another tribunal, upon evidence which cannot be presumed to be the same, finds that the members accused, tried and dropped were not guilty.   *Murdock, appellant,* 7 Pick. 303.   *Murdock* v. *Phillips Academy,* 12 Pick. 243.   *Gregg* v. *Massachusetts Medical Society,* 111 Mass. 185.   *Fitzgerald* v. *Robinson,* 112 Mass. 371, 379.   See *Society for Visitation of the Sick* v. *Commonwealth,* 52 Penn. St. 125; *Commonwealth* v. *German Society,* 15 Penn. St. 251; *Leech* v. *Harris,* 2 Brewst. 571: also, *State* v. *Georgia Medical Society,* 38 Ga. 608; *Baxter* v. *Chicago Board of Trade,* 83 Ill. 146.   As the finding is put by the master solely upon an untenable ground, the plaintiffs' exception to it must be so far sustained as to eliminate from the report any statement that the membership of the association was not changed by the action of the meeting.

The article under which that meeting acted differs from the one considered in *Gray* v. *Christian Society,* 137 Mass. 329.   It explicitly provides that an offending member " may be expelled from the association at any meeting."   While membership is not determined by the mere commission of the offence but by vote, and the expulsion under this article as well as under that considered in *Gray* v. *Christian Society* is a judicial question to be determined by the society after giving the member notice and an opportunity to be heard, perhaps the warrant for the meeting, with its article concerning the revision of membership and the action of the meeting and of its committee afforded sufficient

notice and opportunity for hearing to the members who were expelled. If it were necessary for the decision of the present case to determine whether the expulsion of certain members was effectual, and so whether the master's report should be modified so as to state that the persons whose names were dropped thereby ceased to be members, the question would be one of difficulty in view of the absence of a report of the evidence and in view of the usual presumptions as to master's reports. But it seems to us that the question, whether the persons whose names were dropped thereby ceased to be members, is immaterial to the decision of the present case. Therefore we do not deal with this exception further than to eliminate from the report any finding as to the status of the members whose names were dropped.

The next exception of the plaintiffs is to the finding that the defendants still remain trustees of the association. The constitution does not in terms require that the trustees shall be members of the association, nor does it provide a method for the removal of its officers by the association, and in the call for the meeting at which the association proceeded to elect new trustees in place of the defendants there was no notice that the removal of officers or the choice of new officers would be brought up. Whether the defendants were still members or not, their places could not be filled at the meeting because there was no notice upon that in the warrant. See *People's Mutual Ins. Co.* v. *Westcott*, 14 Gray, 440. This exception should be overruled.

The remaining exception of the plaintiffs is to a finding which is in the alternative concerning the legality of the meeting of November 21, called by the defendants, and of the vote there passed instructing the defendants to close the church, the plaintiffs contending that the master should have found that the action taken at that meeting did not authorize the defendants to close the church. As the finding is in the alternative and is excepted to by both parties, we shall deal with it in connection with the exceptions of the defendants.

The first exception of the defendants is to the following finding of the master: " I find that the trustees, the defendants herein, in closing the church as aforesaid, exceeded their authority in the premises, for I find as a matter of law that a

church building owned by a religious corporation like this one must be kept open for religious services so long as a minority even of its members object to its being closed, and desire to worship therein, it being held in the nature of a trust for the use of all the members." The exception is "on the ground that the church of the association could be closed by trustees having in charge the prudential affairs of the association, when they found that by keeping the church open they were defeating the purpose for which the association was formed, and that the church, at all events, could be closed by a majority vote of the association."

Both grounds stated for the exception are untenable. The trustees of a religious society do not have the power of closing its church at their own will because in their judgment to keep the church open will be to defeat the purpose for which the association was formed. Their power is only to manage the prudential affairs of the society. Pub. Sts. c. 38, § 10. Nor can the church of such a society be closed by a majority vote of the association, "at all events," by which expression we understand the defendants to mean that any church of such an association may be closed by a majority vote of the association whatever may be the circumstances under which the church is held.

We apprehend that the true doctrine is that if the church is held by the association as its absolute property, without any trust whatever, it may be closed by a legal vote of the association passed by a majority of the members present, at a legal meeting called for the purpose, notwithstanding the fact that a minority of the members present desire to use the church and vote against closing it; *Clark* v. *Quincy Evangelical Society*, 12 Gray, 17 ; *Warner* v. *Bowdoin Square Baptist Society*, 148 Mass. 400, 404; but that if a trust for the members of the society attaches to the property in the hands of the society the latter cannot close the church against the wishes of a minority of the society who desire to continue to worship there in accordance with the terms of the trust. *In re New South Meeting-House*, 13 Allen, 497. *Old South Society* v. *Crocker*, 119 Mass. 1, 27.

There is no exception to the finding upon the ground that this church was not held in trust for the use of all the members

of the association. That was a question of fact upon which the evidence not being reported we could not revise the report, even if the exception alleged that ground. Considering the language of the exception and the fact that no evidence is reported, it cannot be said that the master was wrong in finding that the defendants exceeded their authority in closing the church. This exception should be overruled.

The second exception of the defendants is to the finding that the refusal of the bishop does not as a matter of law prevent the association from continuing to exercise its functions as a religious corporation nor its members from maintaining their religious worship. The powers of the association and of its officers and members were derived solely from the statute under which it was organized, and are limited only by the provisions of the statute and the constitution of the association, neither of which prescribes the form of worship or instruction or gives the bishop power over the association or its members. This exception should be overruled.

The third exception of the defendants raises the question whether a two thirds vote is necessary except in the specific instances provided for by the constitution of the association, the master having found that the constitution by inference meant that all important special matters should be decided by a two thirds vote. The question relates only to an attempted dismissal of the pastor, and is entirely immaterial to the decision of the present case. A suit by the pastor for his salary is said to be pending, and we express no opinion upon the question raised by this exception.

The fourth and sixth exceptions of the defendants relate, like the third, to the alleged dismissal of the pastor, and we consider them as immaterial to the decision of the present case.

The remaining exception of the defendants is to the second part of the alternative finding, to the first part of which alternative finding the plaintiffs also excepted. The finding is with reference to the meeting of November 21, called by the defendants after they had been expelled from the association by the vote of November 8, revising the list of members. The meeting voted to hand over the keys of the church to the treasurer, and

that the church remain closed until further orders from the trustees.

The warrant for this meeting is undated, and bears no return of publication or service. It contains no direction as to where it shall be posted. An article of the constitution requires that " The meetings must be called by the clerk or by the treasurer upon a warrant of the synods or trustees by a certified notice published at least seven days before the day of the meeting and posted at the regular place of the meeting of the society or at any place mentioned in the warrant."

The finding states that the records of the association do not disclose the manner in which the warrant was notified to the members, nor whether it was duly posted seven days before the date of the meeting, and that the warrant did not designate the place where it should be posted. The copies from the records of the association annexed to the master's report show that there is no return upon the warrant, and the record of the meeting does not recite that it was called by any warrant or notice, or state that it was duly held. The whole statement as to this is in these words, which we assume to have been written in the record book of the corporation : " Meeting at the town hall, November 21st, 1900." The meeting was not an annual or stated meeting. It was in evidence that those who desired that the church remain open did not attend the meeting, and, two days after it was held, the present proceedings were instituted in court to prevent the closing of the church.

Under such circumstances it cannot be assumed as matter of law that the warrant was published and posted in such a way as to make the meeting a legal meeting. See *Saxton* v. *Nimms*, 14 Mass. 315 ; *Thayer* v. *Stearns*, 1 Pick. 109 ; *First Parish in Sutton* v. *Cole*, 3 Pick. 232 ; *Gilmore* v. *Holt*, 4 Pick. 258 ; *Waldron* v. *Lee*, 5 Pick. 323 ; *Middlesex Husbandmen & Manufacturers* v. *Davis*, 3 Met. 133 ; *Reynolds* v. *New Salem*, 6 Met. 340, 345 ; *Wood* v. *Cushing*, 6 Met. 448 ; *Wiggin* v. *Freewill Baptist Church*, 8 Met. 301 ; *Merchants' National Bank* v. *Citizens' Gas Light Co.* 159 Mass. 505. There is here no such presumption of regularity as comes from the holding, at the usual place and the regular time of an annual or stated meeting, no record that the meeting was duly held or duly warned, and no

acquiescence for even a short period of time on the part of the association itself or of those members who refused to take part in the meeting and now contend that it was illegal.

We think that the defendants' exception to this finding should be overruled and the plaintiffs' exception sustained, upon the ground that the meeting of November 21, 1900, was not duly notified, and that all action taken at that meeting was invalid and of no effect.

Save in the particulars stated, the report of the master should be confirmed and stand as the report of the facts, save that in other proceedings neither party is to be concluded by the matters upon which we have expressed no opinion.

The next subject for consideration is as to what disposition of the case should be made upon the facts so settled. The defendants do not contend that the controversy as to whether the church building shall be closed or shall be kept open for such religious services as hitherto have been held there cannot be determined in this action. See *Reformed Methodist Society* v. *Draper*, 97 Mass. 349.

The association itself is a plaintiff in the case, and there is no attempt to show that the use of its name as a plaintiff is not warranted. Although the individual plaintiffs do not turn out to be the official trustees of the association, that fact is not conclusive against the right of the association itself to have the relief which it seeks. While the defendants are still trustees of the association their office does not give them the power to close its church against the will of the association or in accordance with a vote passed by the association at an invalid meeting. While the services against which the defendants have attempted to close the church are not conducted under the authority of the regular Roman Catholic Church, the constitution of the association does not purport to limit the use of the church building to such services, and the sole object of the association as declared in the constitution is " to build a church for the public advancement of the worship of God and to insure religious instruction on Sundays." The use which the defendants seek to prevent and the association asks to have them enjoined from interfering with is clearly within the object of the association as stated in its constitution, and is being made by members of the association,

and is not made illegal by virtue of the action of the bishop of the diocese.

The association is entitled to a decree enjoining the defendants from permanently closing the church building of the association against any religious services held for the public advancement of the worship of God, or to insure religious instruction on Sunday, by any members of the association ; and such a decree is to be entered in the case in the Superior Court.

*So ordered.*