EFFIE A. CARTER *vs.* ARTHUR B. PAPINEAU & another.
SAME *vs.* SAME.

Suffolk.    November 4, 1915. — January 27, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Ecclesiastical Law.   Religious Society.   Jurisdiction.   Libel and Slander.   Evidence*, Self-serving statements, Letters.   *Letter.*

A member of the Protestant Episcopal Church of America, which in its canons of ecclesiastical law provides that a person wrongly excluded by a minister of the church from the rite of the Holy Communion may lodge a complaint with the bishop, even if our civil courts had jurisdiction of the matter, could not maintain an action for an alleged wrongful refusal of the rite if he did not avail himself of his right of appeal to the bishop.

The alleged right of a communicant of a church to participate in the Holy Communion, which is properly a subject for ecclesiastical law, is not enforceable in the civil courts of this Commonwealth.

Where a minister of the Protestant Episcopal Church of America excludes a member of the church from participation in the rite of the Holy Communion under a rubric of the church, which gives him authority to refuse the rite to any one whom he knows "to be an open and notorious evil liver, or to have done any wrong to his neighbours by word or deed," such exclusion, without any cause being assigned for it, does not constitute an actionable defamation of character.

A member of a Protestant Episcopal Mission, who has subjected himself to the canons of the church, by which control of the worship and spiritual jurisdiction of the mission, including the use of the building for religious services, is given to the minister in charge, subject to the authority of the bishop, cannot maintain an action of tort against the minister and the bishop for having excluded him, without the use of force, from the church building while a religious service was being conducted there.

At the trial of an action by a member of the Protestant Episcopal Church of America against the minister of the mission church to which the plaintiff belonged for excluding her from participation in the rite of the Holy Communion, where under a canon of the church to which the plaintiff had become subject the minister had authority to exclude a member from participation in the rite of communion for certain reasons without any previous notice, the plaintiff excepted to the admission in evidence of a letter written by the defendant, which the defendant had tried to hand to the plaintiff before the communion service began and which the plaintiff refused to take.   The letter forbade the plaintiff to take part in the service until she should satisfy the defendant or his successor of her "repentance and amendment."   The defendant testified that he laid the letter on a seat in front of the plaintiff, saying to her, "I want you to read that before the service goes on," and that after the service the letter was looked for and

was not found. *Held*, that the letter was in no way a self-serving statement, and that the jury were warranted in finding that the plaintiff took the letter and became aware of its contents, so that it was admissible; and that, even if the letter had not come to the notice of the plaintiff, its admission in evidence could in no way prejudice the plaintiff, as the church canons did not require the defendant to give the plaintiff any notice of her exclusion from the rite of communion.

Two ACTIONS OF TORT by Effie A. Carter, the wife of Frank Albert Carter of the village of Cochituate in the town of Wayland, against Arthur Bradford Papineau, the rector of St. George's Church at Maynard, who conducted the services of the Episcopal Mission in Wayland, and William Lawrence, Bishop of Massachusetts (of the Protestant Episcopal Church of America). Writs dated respectively May 12 and July 3, 1913.

The declaration in the first case contained four counts, of which the plaintiff waived the first and third. The second and fourth counts related respectively to occurrences on the days of May 14 and May 21, 1911, and otherwise contained the same allegations, which were that the defendants publicly stationed a constable of the town of Wayland at the door of a certain building used as a place of worship by the Protestant Episcopal Church of America in Wayland and instructed the constable to prevent the plaintiff from entering the building and to keep her out; that the plaintiff was a communicant of the church and was entitled to enter and worship therein, "but that the defendants by their said agent, by force, wrongfully and publicly prevented her from so doing and held her up to public disgrace, humiliation and shame, and have in effect represented that she was an unfit person to enter and worship in said church."

The declaration in the second action contained two counts. The first count alleged that on or about August 20, 1911, the plaintiff was a communicant of the Protestant Episcopal Church of America and was lawfully entitled to be present and participate in the services of that church and to partake of the Holy Communion as administered in that church; that on that day she entered a certain building used as a place of worship by that church in Wayland, where she was accustomed to worship, and at the proper time and in a proper manner came forward to partake of the Holy Communion; but "that the defendants then and there, without cause and without any notice or warning to her, or any

charge against her, or any hearing or opportunity by her to be heard, refused to administer to her the Holy Communion and repelled her from the Lord's Table without cause." The second count contained the same allegations as the first count and added the following: "whereby the plaintiff says that the defendants have held her up to public disgrace, humiliation and shame, and have in effect represented that she was an open and notorious evil liver, and that she has done some wrong to her neighbors by word or deed so that the congregation has thereby been offended, and that she was an unfit person to enter and worship in said church."

In the Superior Court the cases were tried together before *Lawton,* J. The material evidence is described in the opinion. At the close of the evidence, the judge at the request of the defendants ruled that as a matter of law the plaintiff could not recover in either case and ordered verdicts for the defendants.

The plaintiff alleged exceptions.

*W. R. Bigelow,* for the plaintiff.

*R. Hale,* for the defendants.

BRALEY, J. The evidence would have amply warranted the jury in finding that the defendant Papineau as priest in charge declined to administer to the plaintiff the rite of "Holy Communion" or to permit her to partake thereof, and that by his authority and order she had been refused admission on the Lord's day to the building in which religious services were being held. It is contended that for these acts he and the defendant Lawrence, bishop of the diocese, are responsible in damages, and that the verdicts in their favor were ordered wrongly.

The record shows that the Protestant Episcopal Church of America, of which the parties are members, has a body of canons or ecclesiastical law of its own, by which the plaintiff upon baptism and confirmation agreed to be bound, and under which her rights of worship must be determined. *Fitzgerald* v. *Robinson,* 112 Mass. 371. *Grosvenor* v. *United Society of Believers,* 118 Mass. 78. By the "Rubric in the Order for the Administration of the Lord's Supper, or Holy Communion" the "minister" is given authority to refuse the rite to any one whom he knows "to be an open and notorious evil liver, or to have done any wrong to his neighbours by word or deed." By "Canon 40. Of Regulations Respecting the Laity," Section II, "When a person to whom the Sacraments

of the Church have been refused, or who has been repelled from the Holy Communion under the Rubrics, shall lodge a complaint with the Bishop, it shall be the duty of the Bishop, unless he see fit to require the person to be admitted or restored because of the insufficiency of the cause assigned by the Minister, to institute such an inquiry as may be directed by the Canons of the Diocese or Missionary District, and should no such Canon exist, the Bishop shall proceed according to such principles of law and equity as will insure an impartial decision, but no Minister of this Church shall be required to admit to the Sacraments a person so refused or repelled, without the written direction of the Bishop."

The plaintiff has not availed herself of this right of appeal to the only personage having the requisite ecclesiastical authority to review her standing as a member and communicant or to pass upon her ceremonial rights in accordance with the principles of "law and equity." *Grosvenor* v. *United Society of Believers,* 118 Mass. 78, 91. The letter of her counsel to the bishop, to which no reply appears to have been made, cannot be considered as an appeal which had been denied. It contains only recitals of all her grievances, for the rectification of which his friendly intercession is requested.

But if an appeal had been taken properly and the decision had been adverse, the plaintiff would have been remediless, for in this Commonwealth her religious rights as a communicant are not enforceable in the civil courts. *Fitzgerald* v. *Robinson,* 112 Mass. 371, 379. *Canadian Religious Association* v. *Parmenter,* 180 Mass. 415, 420, 421. For the same reason it is unnecessary to decide whether at common law, as the plaintiff contends, a member of the Church of England could sue if unjustifiably denied participation in the communion. See *Rex* v. *Dibdin,* [1910] P. D. 57; *Thompson* v. *Dibdin,* [1912] A. C. 533.

Nor can the action be maintained for defamation. Undoubtedly she suffered mental distress, and the omission was in the presence of the other communicants. The plaintiff, however, was not publicly declared to be "an open and notorious evil liver," or to be a person who had done wrong to her neighbors by word or deed. The act of "passing her by" without comment was within the discipline or ecclesiastical polity of the church, and does not constitute actionable defamation of character. *Farnsworth* v.

*Storrs*, 5 Cush. 412, 415. *Fitzgerald* v. *Robinson*, 112 Mass. 371. *Morasse* v. *Brochu*, 151 Mass. 567. See R. L. c. 36, §§ 2, 3.

The action for exclusion from the church building also must fail. It appears that upon being informed by the constable employed for the purpose that she could not enter, the plaintiff made no attempt to pass, but acquiesced and obeyed the order. The elements of an assault are absent. No intimidation was used, or unjustifiable coercion exercised. By Canon 16, to which the plaintiff subjected herself, control of the worship and spiritual jurisdiction of the mission, including the use of the building for religious services, was in Papineau as the minister in charge, "subject to the authority of the Bishop."

We are not asked to review the action of an incorporated religious society owning property where a member has been expelled without being notified of the charges and given an opportunity to be heard, as in *Gray* v. *Christian Society*, 137 Mass. 329, nor is any question of a trust in which the plaintiff has a beneficial interest involved. It is not shown that she had any rights of property in the building, the furnishings, or in any contract relating thereto, or that Papineau was actuated by malice or ill will. The manner and time of admission having been within his control primarily, the acts of temporary exclusion are not reviewable at law or in equity. *Fitzgerald* v. *Robinson*, 112 Mass. 371. *Grosvenor* v. *United Society of Believers*, 118 Mass. 78. *Canadian Religious Association* v. *Parmenter*, 180 Mass. 415, 421. *Watson* v. *Jones*, 13 Wall. 679.

The remaining exception is to the admission in evidence of a letter of Papineau to the plaintiff, which the jury could find he endeavored to hand to her before communion began, but which she refused to take. It forbade her to partake "until you satisfy me, or my successor or superiors of your repentance and amendment." The letter was not in the nature of a self-serving declaration. The jury, from Papineau's testimony that he laid it on a seat in front of her with the request "I want you to read that before the service goes on," and from the fact that after the service the letter was not found, could say that the plaintiff took it and became aware of the contents. Its admission furthermore could not have prejudiced the plaintiff, as the church canons did not require the giving of any notice.

The relation of the defendant Lawrence to the proceedings may be noticed briefly. It is contended that he approved what had been done, and that, as the acts of his subordinate were tortious, he became a joint wrongdoer by ratification. *Dempsey* v. *Chambers*, 154 Mass. 330. But, as Papineau did not exceed or abuse his powers, no tort had been committed. The result is that in each case the exceptions must be overruled.

*So ordered.*