Henry Cohen *vs.* Eliezer Silver & others.

Hampden.    September 17, 1931. — December 1, 1931.

Present: Rugg, C.J., Crosby, Carroll, Sanderson, & Field, JJ.

*Equity Jurisdiction*, Internal affairs of religious organization, To enjoin unlawful interference.  *Unlawful Interference.  Religion.*

Laws, rules and regulations of orthodox Jewish congregations in force in Springfield provided that a wholesale meat dealer could do no business there in kosher meat unless he had a permit from the rabbi and a religiously constituted board called the Vaad Hakashruth having to do with the regulation of such sales; that a Din Torah was a religiously constituted court usually composed of at least one rabbi and presided over by one or more persons, one of whom must be learned in such laws,

rules and regulations; that, if a wholesale dealer in kosher meat should violate the law of the Sabbath publicly or would not listen to the rulings of the rabbi or when called to a Din Torah would not answer, then on first complaint he should be punished and after that, if he did not promise to do right according to Jewish law he would be disbarred from being such a wholesale dealer; that such a wholesale dealer complained of before a Vaad Hakashruth had the right to appear at any hearing of his case unless the rabbi reported concerning the matter, in which case the report of the rabbi was believed and the person complained of might not appear in person; and that the laws regarding kosher must be kept by the members of the congregations. One, whose brother had such a permit to deal as a wholesaler of kosher meat, after having been in partnership with him in that business for several years, ceased to be such partner but continued for over a year in such business without a permit, violated the Jewish laws respecting the Sabbath and refused to answer a summons to a Din Torah touching a controversy with his brother; and, after a hearing by the Vaad Hakashruth at which the statement of the rabbi was accepted as true but the wholesaler did not appear, that board in effect ordered the official butchers no longer to kill for him. He was given no notice of the decision and lost trade and suffered financial loss by reason of being deprived of the privilege of having cattle killed in kosher. Thereafter, averring that such interference with his business was unlawful, he sought by a suit in equity to enjoin it. The suit was dismissed and he appealed. *Held,* that

(1) The plaintiff, by becoming a member of an orthodox Jewish congregation and seeking to conduct a business with respect to kosher food which played a highly important part in the faith of members of such congregations, was not entitled to continue that business under religious sanction if he did not conform to the canons of that faith touching that subject and abide by the decisions of the tribunals erected and constituted for the determination of controversies concerning that subject;

(2) Courts do not sit in review of decisions rendered by such tribunals even though it may appear that there has been an error of judgment, an innocent mistake or a failure to make a searching investigation;

(3) It was not fatal to the validity of the decision of the Vaad Hakashruth that no hearing was granted to the plaintiff and no direct notice given him of the final determination reached, it appearing that the procedure of that board was in accordance with its established ecclesiastical and other rules;

(4) Although the religious functionaries did not immediately take steps, after the plaintiff ceased to be associated with his brother, to prevent him from holding himself out as possessing the sanctions which he lacked but suffered him to continue his business for a time, he was not thereby given a vested right to perpetuate the deception upon the adherents of that religious faith;

(5) The defendants constituting the authoritative ecclesiastical tribunal and subordinate officials had a right to pursue the course marked out by their rules and regulations to prevent any one not possessed of the requisite credentials from continuing in a field which, although distinctly religious under their church polity and beliefs, also involved

aspects of commercial profit; and the plaintiff must forego that profit because he refused to conform to the requirements of the religious polity, beliefs and faith.

(6) The suit properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on March 3, 1931, and described in the opinion.

The suit was referred to a master. Material facts found by the master are stated in the opinion. After the filing of the master's report, the suit was heard by *Greenhalge*, J., by whose order there were entered an interlocutory decree confirming the report and a final decree dismissing the bill. The plaintiff appealed.

*J. E. Kerigan*, for the plaintiff.

*H. M. Ehrlich*, (*J. L. Dowd & J. I. Robinson* with him,) for the defendants.

RUGG, C.J. The plaintiff seeks by this suit in equity to compel the defendants to desist from interfering with his business and injuring his property rights and to recover compensation for damages already sustained by him through their alleged wrongdoings. The case was heard upon a master's report, the evidence on which its findings rest not being included therein. The plaintiff appealed from a final decree dismissing the bill. Under familiar practice, the facts set forth in the master's report must be accepted as true unless mutually inconsistent or contradictory and plainly wrong and this court decides the case upon the report in accordance with its own judgment and without deference to the action of the trial court.

The controversy relates to the right of the plaintiff to continue in wholesale kosher meat business in Springfield in accordance with Jewish rules and practices. The facts so far as material to the grounds of this decision are these: The plaintiff has been engaged in this business for several years, until 1929 as partner with a brother and since then as an individual. The plaintiff is a member of one of the five orthodox Jewish congregations in Springfield. The defendant Silver represents four of these congregations as rabbi. Four of the defendants are "the recognized butchers known as schochtim for these Orthodox congre-

gations." All the defendants are members of a religiously
constituted board known as the Vaad Hakashruth having
to do with the regulation of the sale of kosher meat in
Springfield. In order that cattle may be slaughtered in
such manner that the meat therefrom may be sold as kosher
food certain laws, rules and regulations based on the Old
Testament, the Talmud and commentaries thereon which
have been in existence for centuries must be observed.
Among these are rules that a man who violates publicly
the law of Sabbath or is suspected of violating that law
or "does not believe in the Talmud, or has eaten non-
kosher food is not a proper man to sell anything as kosher
food," and that when the "Vaad Hakashruth . . . to-
gether with the rabbi, passes a rule relative to kosher food,
this rule must be kept by the members of the congregation
or congregations with the force of a law." One of these
regulations in effect in Springfield at the times here in
question provided in substance amongst other matters
that if a wholesaler in kosher meat shall violate the law
of the Sabbath publicly or will not listen to the rulings of
the rabbi or when called to a Din Torah will not answer,
then on first complaint he shall be punished and "after
that if he does not promise to do right according to Jewish
Law he will be disbarred" from being a wholesale dealer
in kosher food. A Din Torah is a religiously constituted
court usually composed of at least one rabbi and presided
over by one or more persons one of whom must be learned
in the aforesaid laws, rules and regulations. The law in
regard to kosher food is a very important part of the Jew-
ish faith. The granting and revoking of authority to
deal in such food rest with the rabbi and the Vaad Ha-
kashruth. Before a wholesale kosher dealer can do busi-
ness in kosher meat in Springfield he must according to
the Jewish law get a permit from the rabbi and the Vaad
Hakashruth together. When the plaintiff was in partner-
ship with his brother the latter alone was recognized as
the wholesale dealer and as having a license therefor.
After the termination of that partnership, the "schochtim"
or official butchers of kosher meat continued to slaughter

cattle for the plaintiff and charge him therefor but the plaintiff never secured from the Vaad Hakashruth or from any rabbi a license or permit to do business as a wholesale dealer in kosher meat. In 1927 a fine imposed on the plaintiff for some violation of a law relative to kosher meat in connection with his business was paid by the brother of the plaintiff. The master found that the plaintiff has at different times and in divers ways violated the Jewish law with respect to the Sabbath and that he has refused to answer a summons to a Din Torah touching a controversy with his brother. The rabbi insisted that the plaintiff allow this controversy to be taken up before the Din Torah but the plaintiff refused on the ground that his brother ought to bring action against him and permit the affair to be settled in the courts. Notice was given that, if the plaintiff persisted in this course, a special meeting of the Vaad Hakashruth would be called to consider the matter. Such meeting was later called at which all of the defendants were present but which was not attended by the plaintiff or any one representing him. A wholesaler thus complained of before a Vaad Hakashruth has the right to appear at any hearing of his case unless the rabbi reports concerning the matter in which case the report of the rabbi is believed and the person complained of may not appear in person. At this particular hearing the members of the board acted after a hearing at which the statement of the defendant Rabbi Silver relative to the refusal of the plaintiff to answer to a Din Torah was accepted as true. The members also considered the facts that the plaintiff was no longer in partnership with his brother, that he was violating the law of the Sabbath publicly, that he was not generally recognized as a wholesale kosher butcher although known by the members to have been such wholesale dealer. since the dissolution of the partnership with his brother, that on several occasions he had not hearkened to the instructions of the rabbi and that he had refused to answer the summons of the defendant Rabbi Silver to a Din Torah. "After consideration the Vaad Hakashruth decided that unless the plaintiff

would promise to act in accordance with the Jewish law the schochtim [or official butchers] should not kill for him in kosher," and those persons were notified "not to kill any more for the plaintiff in kosher." It does not appear that any notice of this decision was sent to the plaintiff, although one of the "schochtim" told him of the instructions received by them. The plaintiff has lost trade and suffered financial loss by reason of being deprived of the privilege of having cattle killed in kosher.

The plaintiff by becoming a member of an orthodox Jewish congregation and seeking to conduct a business with respect to kosher food which plays a highly important part in the faith of members of such congregations must conform to the canons of that faith touching that subject if he desires to continue that business under religious sanction. He cannot hold or gain that kind of commercial advantage unless he complies with all requirements of the rules established by that religious sect as prerequisite therefor, and he must also abide by the decisions of the tribunals erected and constituted for the determination of controversies concerning that subject. He cannot claim the benefits of the business without accepting the burdens attached to it. As incidents of his membership in the religious organization and his undertaking to do this particular kind of business, he impliedly consented to be governed in all essential matters by the decisions of boards established to end disputes and contentions of this sort. Courts do not sit in review of decisions thus rendered even though it may appear that there has been an error of judgment, an innocent mistake or failure to make a searching investigation. *Snay* v. *Lovely*, 276 Mass. 159, 163–164, and cases cited. Courts are especially reluctant to interfere in a controversy which like the one at bar rests largely upon ecclesiastical dogma and rabbinical practices. As to matters of that nature religious organizations are themselves entitled to a pretty free hand under settled principles of law. *Grosvenor* v. *United Society of Believers*, 118 Mass. 78. *Carter* v. *Papineau*, 222 Mass. 464. *Krauthoff* v. *Attorney General*, 240 Mass. 88. *Moustakis* v. *Hellenic Orthodox Society*, 261 Mass. 462. *Glaser*

v. *Congregation Kehillath Israel,* 263 Mass. 435. It is not fatal to the validity of the decision of the Vaad Hakashruth that no hearing was granted to the plaintiff and no direct notice given him of the final determination reached provided the procedure of that board according to its established ecclesiastical and other rules was followed. *Clark v. New England Telephone & Telegraph Co.* 229 Mass. 1. The case at bar is therefore distinguishable from decisions like *Gray* v. *Christian Society,* 137 Mass. 329, *Canadian Religious Association* v. *Parmenter,* 180 Mass. 415, and *Sabourin* v. *Lippe,* 195 Mass. 470, where vested property rights were concerned and rules of the organization either were not followed or did not cover the point in issue, and from those like *Traders & Mechanics' Ins. Co.* v. *Brown,* 142 Mass. 403, and *Klotz* v. *Pan-American Match Co.* 221 Mass. 38, where corporations have undertaken to contravene provisions of general law.

One of the facts found by the master is that, although the plaintiff carried on business as a wholesale dealer in kosher meat after the dissolution of the partnership with his brother, he never was granted a permit for that purpose from the religious body or officer which alone had authority to grant such dispensation. The religious functionaries did not immediately take steps to stop the plaintiff from holding himself out as possessing the sanctions which he lacked but suffered him to continue his business for a time. That circumstance gave the plaintiff no vested right to perpetuate a deception upon the adherents of that religious faith. The defendants constituting the authoritative ecclesiastical tribunal and subordinate officials had a right to pursue the course marked out by their rules and regulations to prevent any one not possessed of the requisite credentials from continuing in a field which, although distinctly religious under their church polity and beliefs, also involved aspects of commercial profit. The plaintiff must forego that profit because he refused to conform to the requirements of the religious polity, beliefs and faith.

*Decree affirmed with costs.*