United Kosher Butchers Association *v.* Asso. Synagogues of Greater Boston.

ceeds zoning limitations "cannot be made a fulcrum to lift those limitations." *Cary* v. *Board of Appeals of Worcester,* 340 Mass. 748, 750. *Ferrante* v. *Board of Appeals of Northampton,* 345 Mass. 158, 161. We hold that where the proposal is to extend on the lot an existing violation the finding (required by § 15) may not be made that "desirable relief may be granted . . . without nullifying or substantially derogating from the intent or purpose of such . . . by-law." Even apart from the foregoing considerations, the variance would fail for want of a showing of sufficient hardship. See *Winters* v. *Zoning Bd. of Review of Warwick,* 80 R. I. 275, 279–280 ("hardship" does not refer to personal infirmity).

The final decree is reversed. A decree is to enter in the Superior Court annulling the decision of the board of appeals.

*So ordered.*

---

UNITED KOSHER BUTCHERS ASSOCIATION *vs.* ASSOCIATED SYNAGOGUES OF GREATER BOSTON, INC. & others.

Suffolk. October 4, 5, 1965. — October 29, 1965.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Religion. Jurisdiction,* Over ecclesiastical controversies, Justiciable question. *Restraint of Trade. Unlawful Interference.*

A demurrer was rightly sustained to a bill in equity on the ground that the central issue shown by the bill pertained to exclusively ecclesiastical matters which were not proper subjects for judicial inquiry where the bill alleged in substance that the plaintiff was an association of kosher retail meat stores actively engaged in the certification and supervision, under the auspices and direction of its rabbi, of its member stores with respect to compliance with the tenets of the orthodox Jewish faith in the preparation of kosher meats and poultry, that the member stores were "under contract" with the plaintiff to comply with the requirements of its rabbi, that the defendant was a corporation of Synagogues maintaining a committee which, with the aid of a group of orthodox Jewish rabbis, certified caterers as authentic purveyors of kosher foods, that recently the defendant had refused to accept the "Rabbinical cer-

tification" of the plaintiff's rabbi and required kosher caterers to purchase only from stores supervised by the defendant's rabbis, leading to cancellation of caterers' orders to the plaintiff's member stores and guilt on the part of the defendant of "restraint of trade," that the defendant solicited the plaintiff's member stores to end their relationship with the plaintiff and to accept the rabbinical supervision of the defendant's rabbis, leading to breaches of existing contracts between the plaintiff and the member stores, and that the defendant's interference was "malicious."

BILL IN EQUITY filed in the Superior Court on December 20, 1960.

The suit was reported by *Cahill, J.*

*Maurice S. Glaser* for the plaintiff.

*Frank L. Kozol* (*Charles G. Kadison, Jr.,* with him) for the defendants.

SPALDING, J.   Following the entry of an interlocutory decree sustaining the defendants' demurrer to the plaintiff's bill, the judge reported the matter to this court.   G. L. c. 214, § 30.

The pertinent averments of the bill are these.   The plaintiff, United Kosher Butchers Association (United), is a Massachusetts corporation, whose "members" consist of most of the kosher retail meat stores in Greater Boston. Since 1930 United has been actively engaged in the certification and supervision, under rabbinical auspices and direction, of its member stores with respect to kosher meats and poultry.   The member stores hold themselves out to the public as handling these items.   For the past seven years United's activities have been conducted under the direction of Rabbi Mordecai Savitsky.   Through his efforts and in accordance with his interpretations United has enforced strict compliance with the tenets of the orthodox Jewish faith.   By reason of the high standing in the community of both United and Rabbi Savitsky the consumer public desiring to purchase kosher meats and poultry has accepted United's certification "in complete faith and assurance that all the Kashruth requirements have been thoroughly observed."   All of the member stores by virtue of their membership are "under contract . . . with . . . [United] to

comply with all the requirements and standards of . . . [United's] Rabbinical Advisor.''

The defendant, Associated Synagogues of Greater Boston, Inc. (Associated), is a Massachusetts corporation which maintains a committee known as the ''Kashruth Commission.'' With the aid of the ''Vaad Harabonim of Greater Boston'' (a group of orthodox Jewish rabbis), the ''Kashruth Commission'' certifies caterers in Greater Boston as authentic purveyors of kosher foods. For ''many years'' United's certification of kosher food and meats had been accepted by Associated in approving caterers. However, since August 15, 1960, Associated has refused to accept the ''Rabbinical certification'' of Rabbi Savitsky and has required that kosher caterers ''purchase meat from kosher retail meat stores supervised by the Vaad Harabonim.'' United's member stores have been notified that their meat and poultry orders to kosher caterers will not be acceptable unless their preparation has been supervised by Associated's rabbinical inspectors. As a result of this notification numerous orders from kosher caterers to United's member stores were cancelled. The plaintiff charges that by virtue of these activities the defendants are ''guilty of a Restraint of Trade, elimination of a free market and the hindering and denying of free competition.''

The bill further recites that throughout this same period the several defendants have solicited various member stores to end their relationship with United and to accept the rabbinical supervision of the ''Vaad Harabonim.'' The defendants were notified in August, 1960, that this line of conduct had already resulted in several breaches of existing agreements between the plaintiff association and its members. At no time during this controversy, however, have the defendants complained to the plaintiff's rabbinical advisor of any known or suspected irregularities or departures from strict Kashruth requirements in the performance of his duties. These actions, it is charged, illegally interfere with United's contractual relations.

The plaintiff seeks to have the defendants enjoined from

engaging in the activities complained of in the bill; and there is also a prayer for damages.

The sole basis of the demurrer is that the bill pertains to matters which are exclusively ecclesiastical under the orthodox Jewish religion and hence are not proper subjects for judicial inquiry.

It is settled by our decisions that courts will not interfere in a controversy which is exclusively or primarily of an ecclesiastical nature. *Fitzgerald* v. *Robinson,* 112 Mass. 371, 379–380. *Grosvenor* v. *United Soc. of Believers,* 118 Mass. 78, 91. *Canadian Religious Assn.* v. *Parmenter,* 180 Mass. 415, 421. *Carter* v. *Papineau,* 222 Mass. 464, 467. *Krauthoff* v. *Attorney Gen.* 240 Mass. 88, 92. *Moustakis* v. *Hellenic Orthodox Soc. of Salem & Peabody,* 261 Mass. 462, 466. *Cohen* v. *Silver,* 277 Mass. 230, 235. *Solomon* v. *Congregation Tiffereth Israel of Revere,* 344 Mass. 755. Conceding the ecclesiastical nature of the present controversy, the plaintiff nevertheless argues that its property rights are so affected that the case at bar does not come within the rule stated above. In religious controversies where civil or property rights have been abridged, or where the construction of legal instruments has been involved, our courts have been less reluctant to interfere. See *Gray* v. *Christian Soc.* 137 Mass. 329 (deprivation of membership in a church without a hearing and without a vote of the society held invalid); *Canadian Religious Assn.* v. *Parmenter,* 180 Mass. 415 (holding that a majority of church members could not close the church against wishes of a minority where there was a trust of church property for benefit of all the members); *Attorney Gen.* v. *Armstrong,* 231 Mass. 196 (interpretation of deed of trust to a church); *Eustace* v. *Dickey,* 240 Mass. 55 (interpretation of trust instrument).

Phrasing the issue raised by the demurrer in terms of whether the controversy is "primarily" or "largely" a religious one can be misleading. The determination of a religious question by religious authorities may seriously affect the property or property rights of an individual. This was the case in *Grosvenor* v. *United Soc. of Believers,* 118 Mass. 78, where the court would not review the correct-

ness of the decision.  Conversely, the construction of a trust may determine a question such as whether a church must remain open for worship against the wishes of a majority of its members and against the orders of a bishop. In a case involving this question the court has intervened. *Canadian Religious Assn.* v. *Parmenter,* 180 Mass. 415. Thus judicial intervention is determined by the nature of the central issue to be resolved, and not by the incidental or consequential results of the decision.

In essence the plaintiff is asking that Associated and its allied groups be compelled to accept United's guaranty that products prepared under its auspices are authentically kosher.  This we decline to do.  Aside from the constitutional freedoms involved, this court is not qualified to decide and therefore must refuse to consider an issue which is so exclusively one of religious practice and conscience.  As was said by Rugg, C.J., in *Moustakis* v. *Hellenic Orthodox Soc. of Salem & Peabody,* 261 Mass. 462 at page 466, "Such a course by the courts would in the end deprive the denominations themselves of interpretations of their own body of church polity, and would establish the courts as the final arbiter in every religious controversy.  The evils attendant upon such a practice have been thought far to outweigh the incidental advantage that might flow from its adoption."

Nor will the charge of restraint of trade render this dispute a proper subject for judicial determination.  Foods labeled kosher have a deeply religious significance to the orthodox Jewish community.  And, since the requirements of Kashruth are prescribed by Jewish law, the preparation of kosher foods has traditionally been under the exclusive control of the rabbis.  See *Cohen* v. *Silver,* 277 Mass. 230. Thus, such foods are by their very nature subjected to some restraints.  Indeed, as was stated by a New York court: "In the very nature of things, kashruth must be a monopoly in the hands of those best qualified to administer it.  By definition and tradition those persons are the rabbis and their decree is final."  *S. S. & B. Live Poultry Corp.* v. *Kashruth Assn. of Greater N. Y. Inc.* 158 Misc. (N. Y.) 358, 365.

The plaintiff further asks that the defendants be enjoined from urging member stores to terminate their association with it and to accept the rabbinical supervision of the "Vaad Harabonim." At first blush this portion of the bill seems less vulnerable to the defence interposed by the demurrer. The benefits attaching to a contract or to an advantageous business relationship are recognized as property rights and any unjustified interference with their enjoyment is actionable. *Berry* v. *Donovan,* 188 Mass. 353. *Owen* v. *Williams,* 322 Mass. 356. The background against which the plaintiff's prayer for relief is made, however, reveals that in any consideration of the merits of its case the crucial questions facing the court would be questions of religious law or practices. The bill indicates that the defendants, Associated and its allied groups, are endeavoring by various means to centralize control over the interpretations and enforcement of Kashruth in Boston in a single agency, namely themselves. Thus, if we were to consider the charge of unlawful interference, we would inevitably be faced with such questions as who has the authority to enforce Kashruth in Boston, what are the criteria for determining whether foods are kosher, and what procedures must the body in charge of Kashruth follow. All of these questions are determinable only by reference to Jewish law, a domain into which the courts will not venture. *Moustakis* v. *Hellenic Orthodox Soc. of Salem & Peabody,* 261 Mass. 462. *Cohen* v. *Silver,* 277 Mass. 230. *S. S. & B. Live Poultry Corp.* v. *Kashruth Assn. of Greater N. Y. Inc.* 158 Misc. (N. Y.) 358. We might add that by characterizing the defendants' interference with its contract as "malicious" the plaintiff adds nothing to its bill, since this is merely a conclusion of law. See *Moskow* v. *Boston Redevelopment Authy. ante,* 553, 563, and cases cited.

The interlocutory decree sustaining the demurrer is affirmed. A final decree is to be entered dismissing the bill.

*So ordered.*